DONALDSON, FKA SWEET *v.* UNITED
STATES ET AL.

No. 65.   Argued November 19, 1970—Decided January 25, 1971

BLACKMUN, J., delivered the opinion of the Court, in which BURGER, C. J., and BLACK, HARLAN, STEWART, WHITE, and MARSHALL, JJ., joined. DOUGLAS, J., filed a concurring opinion, *post*, p. 536. BRENNAN, J., filed a statement concurring in the result, *post*, p. 536.

*Robert E. Meldman* argued the cause for petitioner. With him on the briefs was *Louis L. Meldman.*

*Lawrence G. Wallace* argued the cause for the United States et al. On the brief were *Solicitor General Griswold, Assistant Attorney General Walters, Deputy Solicitor General Springer, Samuel Huntington, Joseph M. Howard,* and *John P. Burke.*

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

We are here concerned with problems arising in connection with the issuance and judicial enforcement of an internal revenue summons directed to someone other than the individual taxpayer.

Kevin L. Donaldson, formerly known as Merton H. Sweet, apparently was once employed by, or was a performer for, Acme Circus Operating Co., Inc., dba Clyde Beatty-Cole Bros. Circus.[1] Mr. Donaldson (sometimes referred to herein as the "taxpayer") is an individual whose income tax returns for the calendar years 1964–1967, inclusive, are under investigation by the Internal Revenue Service.

On September 12 and 13, 1968, Special Agent John P. Grady, purportedly acting under the authority of § 7602 of the Internal Revenue Code of 1954, 26 U. S. C. § 7602,[2]

---

[1] The record does not specifically support the fact of Donaldson's employment by, or performance for, Acme. In the context of the case, however, this is implied and, obviously, the investigation is directed to the ascertainment of the fact.

[2] "§ 7602. Examination of books and witnesses

"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability

issued and served separate summonses to Acme and to Joseph J. Mercurio, Acme's accountant, commanding their appearance before Grady on September 23 and 24 "to give testimony relating to the tax liability" of Donaldson and to produce certain of Acme's records having to do with the taxpayer. The records specified were "applications for employment and/or any other records containing background data including Social Security number furnished you by" the taxpayer; all contracts between the taxpayer and Acme and between him "and the various organizations sponsoring performances of the circus . . . during . . . 1964 through 1967, inclusive"; Forms 1099 and W–2 issued to the taxpayer; a schedule of the payments made to the taxpayer by the sponsoring organizations; checks and vouchers relating to payments to the taxpayer by Acme; expense vouchers submitted by the taxpayer; records containing information as to the identification of each sponsoring organization; and "correspondence or other records relating to the foregoing or to any other financial transactions between Acme" and the taxpayer during 1964–1967, inclusive.

Shortly prior to the issuance of these summonses, the United States District Court for the Middle District of Florida, upon petitions filed by the taxpayer, issued tem-

---

of any person for any internal revenue tax . . . or collecting any such liability, the Secretary or his delegate is authorized—

"(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

"(2) To summon the person liable for tax . . . or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax . . . or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

"(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."

porary restraining orders, and then, as to Mercurio, a preliminary injunction, restraining Mercurio and Acme from complying with Grady's requests or with any subsequent summons directing the production of the records "until such time as an order of a court of competent jurisdiction has been issued requiring such compliance."

On November 25, 1968, the United States and Agent Grady, pursuant to 26 U. S. C. §§ 7402 (b) and 7604 (a),[3] filed petitions with the same federal court for the judicial enforcement of the summonses directed to Mercurio and to Acme. The petitions were supported by affidavits of Grady and of Special Agent Bruce B. Miller.[4] Each affidavit was to the effect that the affiant was conducting or assisting in the conduct of "an investigation for the purpose of ascertaining the correct income tax liability" of the taxpayer for the years 1964–1967, inclusive, and that it was "necessary" to examine the records and to take the testimony requested in order to ascertain the taxpayer's correct income tax liability for those years.

---

[3] "§ 7402. Jurisdiction of district courts

"(b) To enforce summons.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data."

"§ 7604. Enforcement of summons

"(a) Jurisdiction of district court.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data."

[4] Agent Grady worked from the Tampa District Office of the Internal Revenue Service, and Agent Miller from the New Orleans District Office. The taxpayer had a New Orleans address; Mercurio and Acme possessed Florida addresses.

In response to the ensuing orders to show cause, the taxpayer, purportedly pursuant to Fed. Rule Civ. Proc. 24 (a)(2), filed motions to intervene in the enforcement proceedings. He accompanied each motion with a proposed answer. In the answer he alleged that Special Agents Grady and Miller were guilty of bad faith in asserting that they were conducting an investigation to ascertain the taxpayer's correct income tax liability for the years in question; that the two agents were assigned to Intelligence Divisions of the Service; that they were investigating the taxpayer "for the express and sole purpose of obtaining evidence concerning any violations of the criminal statutes applicable to the tax laws of the United States"; and that, as a consequence, the summonses were not issued for any purpose within the scope of § 7602. It was also asserted, although apparently it is not now urged here, that the requests in the summonses were overly broad and "without a showing of particularized relevancy," and that the taxpayer, under the Constitution, "is entitled to be secure in his personal papers and personal effects from unreasonable searches and seizures."

Mercurio and Acme, on their part, also filed responses to the orders to show cause. Each alleged that "were it not for" the preliminary injunction or temporary restraining order theretofore entered, "the Respondent would have complied with the summons." [5]

The orders to show cause were returnable before Judge Lieb. After the submission of memoranda and argument, but without the introduction of testimony, the court denied the motions to intervene and ordered Mercurio and Acme to appear before Grady and to produce

---

[5] Mercurio and Acme are not active parties to the present review. They advise the Court that they are "ready to follow the orders of the court, and are nominal parties only."

the records requested. The court then consolidated the two cases for purposes of appeal and granted stays pending appeal. The Fifth Circuit affirmed. *United States* v. *Mercurio,* 418 F. 2d 1213 (CA5 1969).

Certiorari was granted, 397 U. S. 933 (1970), because the case appeared to raise important questions relating to the administration and enforcement of the revenue laws, and because the courts of appeals have differed in their reading of *Reisman* v. *Caplin,* 375 U. S. 440 (1964).[6]

## I

Despite the contrary intimations in the motions to intervene, there is now no constitutional issue in the case. The taxpayer on oral argument so conceded.[7] In any event, that question appears to have been settled long ago when the Court upheld, against Fourth Amendment challenge, an internal revenue summons issued under the Revenue Act of 1921 and directed to a third-party bank. *First Nat. Bank* v. *United States,* 267 U. S. 576 (1925), aff'g 295 F. 142, 143 (SD Ala. 1924). See also *United States* v. *First Nat. Bank,* 274 F. Supp. 283, 284 (ED Ky. 1967), aff'd *sub nom. Justice.* v. *United States,* 390 U. S. 199 (1968), and *United States* v. *Shlom,* 420 F. 2d 263, 266 (CA2 1969), cert. denied, 397 U. S. 1074 (1970).

## II

We emphasize initially, as did Judge Tuttle in his opinion for the Court of Appeals, 418 F. 2d, at 1214, that what is sought here by the Internal Revenue Service

---

[6] Compare the Fifth Circuit's holding in the present case; *In re Cole,* 342 F. 2d 5 (CA2), cert. denied, 381 U. S. 950 (1965); and *O'Donnell* v. *Sullivan,* 364 F. 2d 43, 44 (CA1 1966), with *United States* v. *Benford,* 406 F. 2d 1192 (CA7 1969); *United States* v. *Bank of Commerce,* 405 F. 2d 931 (CA3 1969); and *Justice* v. *United States,* 365 F. 2d 312 (CA6 1966).

[7] Tr. of Oral Arg. 9–10.

from Mercurio and from Acme is the production of *Acme's* records and not the records of the *taxpayer.* Further, as Judge Tuttle also emphasized, this is not a case where a summons has been issued to the taxpayer himself seeking access to his books and information from his mouth. Neither is it a case where the summons is directed at the taxpayer's records in the hands of his attorney or his accountant, with the attendant questions of privilege, or even in the hands of anyone with whom the taxpayer has a confidential relationship of any kind. Each of the summonses here, we repeat, was directed to a third person with respect to whom no established legal privilege, such as that of attorney and client, exists, and had to do with records in which the taxpayer has no proprietary interest of any kind, which are owned by the third person, which are in his hands, and which relate to the third person's business transactions with the taxpayer.

## III

Mr. Justice Clark, in Part II of his opinion for a unanimous Court in *Reisman,* 375 U. S., at 445–446, reviewed the statutory structure that Congress has provided for the issuance and enforcement of an internal revenue summons. It will perhaps be rewarding for us to outline that structure once again.

Section 7601 of the 1954 Code, 26 U. S. C. § 7601, directs the Secretary or his delegate "to the extent he deems it practicable" to cause Treasury Department officers or employees "to proceed . . . and inquire after and concerning" all persons "who may be liable to pay any internal revenue tax." The section thus flatly imposes upon the Secretary the duty to canvass and to inquire. This is an old statute. It has roots in the first of the modern general income tax acts, namely, the Tariff Act of October 3, 1913, § II, ¶ I, 38 Stat. 178, and prior to

that, in § 3172, as amended, of the Revised Statutes of 1874.

Section 7602 authorizes the Secretary or his delegate for "the purpose of ascertaining the correctness of any return . . . determining the liability of any person for any internal revenue tax . . . or collecting any such liability . . . [t]o summon the person liable for tax . . . or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax . . . or any other person the Secretary or his delegate may deem proper, to appear . . . and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry . . . ."

Section 7603 provides for service of the summons. There is no provision for personal enforcement of the summons by the Secretary or his delegate. If enforcement is desired, he must proceed under § 7402 (b), or its sister and essentially identical statute, § 7604 (a), see n. 3, *supra,* each of which grants the district courts of the United States jurisdiction "by appropriate process to compel such attendance, testimony, or production."

Then, as Mr. Justice Clark pointed out, 375 U. S., at 446:

> "Any enforcement action under this section [§ 7402 (b)] would be an adversary proceeding affording a judicial determination of the challenges to the summons and giving complete protection to the witness. In such a proceeding only a refusal to comply with an order of the district judge subjects the witness to contempt proceedings."

Finally, § 7605 (a) provides that the time and place of the examination "shall be such . . . as may be fixed by the Secretary or his delegate and as are reasonable under the circumstances" and, with respect to a § 7602

summons, that "the date fixed for appearance . . . shall not be less than 10 days from the date of the summons."

Thus the summons is administratively issued but its enforcement is only by federal court authority in "an adversary proceeding" affording the opportunity for challenge and "complete protection to the witness."

## IV

*Reisman* was an action, instituted by attorneys for a husband and wife, for declaratory and injunctive relief against the Commissioner of Internal Revenue and an accounting firm which had been working on the tax-payer-couple's financial records at their request. The Commissioner had issued summonses to the accounting firm for the production of work papers and correspondence. It was contended that the enforced production of the papers was an unlawful appropriation of the attorneys' work product and trial preparation. The Court concluded that the petitioner-attorneys possessed an adequate remedy at law and that the complaint, therefore, was subject to dismissal. In reaching this conclusion, the Court emphasized the employment of the accounting firm by the attorneys "to assist them in connection with certain civil and criminal tax proceedings arising from the alleged tax liability of the" tax-payers; that the products of the joint work of the accountants and the attorneys "were kept separate in the accounting firm's files and labeled as the property of" the attorneys; that at the time of the service of the summonses "there were four civil tax cases pending in the Tax Court contesting alleged deficiencies" and, in addition, "a criminal investigation of Mr. Bromley on the tax matters was in progress."

The Court noted that the petitioners made no claim that § 7602 "suffers any constitutional infirmity on its face" and that the Government conceded that "a witness

or any interested party may attack the summons before the hearing officer." The Court agreed. It went on to observe that "in tax enforcement proceedings the hearing officer has no power of enforcement or right to levy any sanctions"; and that "in any of these procedures before either the district judge or United States Commissioner, the witness may challenge the summons on any appropriate ground." Among such grounds the Court included "the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution" or the defense that it is protected by the attorney-client privilege. It went on to say, "In addition, third parties might intervene to protect their interests, or in the event the taxpayer is not a party to the summons before the hearing officer, he, too, may intervene" and that this "would be true whether the contempt be of a civil or criminal nature." Finally, it said that there would be no difference should the witness indicate "that he would voluntarily turn the papers over."

Ten months later the Court decided *United States* v. *Powell*, 379 U. S. 48 (1964), and its companion case, *Ryan* v. *United States*, 379 U. S. 61 (1964). These concerned, respectively, internal revenue summonses issued to the president of a corporate taxpayer and to an individual taxpayer with respect to re-examinations and tax years for which assessments would be barred except for fraud. The Court was primarily concerned with the standards the Internal Revenue Service must meet in order to obtain judicial enforcement of its orders. It held that probable cause to suspect fraud was not required under the statutes and that the Commissioner need show only "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession,

and that the administrative steps required by the Code have been followed . . . ." Again it was emphasized that at the adversary hearing to which the taxpayer is entitled before enforcement is ordered, he may challenge the summons on any appropriate ground. It was also stated that the burden of showing an abuse of the court's process is on the taxpayer.

## V

With all this as background, our central inquiry here is as to Donaldson's right to intervene in the summons proceedings. Donaldson had obtained preliminary relief (in the form of a temporary restraining order and, as to Mercurio, in the form of the succeeding preliminary injunction as well) in his self-instituted actions to restrain Mercurio's and Acme's voluntary compliance with Grady's request. But when the enforcement proceedings were instituted by the United States and Grady, the taxpayer was not successful either as to intervention or as to relief by way of restraint.

In his motion to intervene, and here (but apparently not at oral argument in the Court of Appeals, see 418 F. 2d, at 1215), Donaldson would take comfort from the provisions of Fed. Rule Civ. Proc. 24 (a)(2).[8] He asserts that, within the rule's literal language, he possesses "an interest relating to the property or transaction which is the subject of the [enforcement] action and he is so situated that the disposition of the action may as a

---

[8] "Rule 24.

"INTERVENTION

"(a) INTERVENTION OF RIGHT. Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

practical matter impair or impede his ability to protect that interest," and that his interest is not adequately represented by the parties (Mercurio and Acme) to the enforcement proceedings. He would buttress this approach by reliance upon the reference to both § 7604 (a) and the Civil Rules in n. 18 in *Powell*, 379 U. S., at 58,[9] and by reliance upon language appearing in *Reisman*, 375 U. S., at 445.[10]

In our view, however, the taxpayer's argument goes too far in its reading of Rule 24 (a)(2) and of the quotations from *Powell* and from *Reisman*. The Civil Rules, of course, do have an application to a summons proceeding. Rule 81 (a)(3) expressly so provides.[11] But the Civil Rules are not inflexible in this application. Rule 81 (a)(3) goes on specifically to recognize that a district court, by local rule or by order, may limit the

---

[9] "Because § 7604 (a) contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply . . . . The proceedings are instituted by filing a complaint, followed by answer and hearing. . . ."

[10] "However, the Government concedes that a witness or any interested party may attack the summons before the hearing officer. There are cases among the circuits which hold that both parties summoned and those affected by a disclosure may appear or intervene before the District Court and challenge the summons by asserting their constitutional or other claims. . . . We agree with that view and see no reason why the same rule would not apply before the hearing officer."

[11] "Rule 81.

"APPLICABILITY IN GENERAL

"(a) TO WHAT PROCEEDINGS APPLICABLE

"(3) . . . These rules apply . . . to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings."

application of the rules in a summons proceeding. See 7 J. Moore, Federal Practice, ¶ 81.06 [1], p. 4442 (2d ed. 1970). This feature was recognized as purposeful by the Advisory Committee when the pertinent language was added to Rule 81 (a)(3) in 1946. *Id.*, at ¶ 81.01 [6], p. 4413 (2d ed. 1970). The post-*Powell* cases, too, are clearly and consistently to the effect that the footnote in *Powell* was not intended to impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available. *United States* v. *Gajewski*, 419 F. 2d 1088, 1090–1092 (CA8 1969), cert. denied, 397 U. S. 1040 (1970); *Venn* v. *United States*, 400 F. 2d 207, 212 n. 12 (CA5 1968); *McGarry's, Inc.* v. *Rose*, 344 F. 2d 416, 418 (CA1 1965). We agree with that conclusion.

Similarly, the *Reisman* language set forth in n. 10, *supra*, does not guarantee intervention for the taxpayer. Certainly it recites that the proposed witness "or any interested party" may attack the summons before the hearing officer, as well as before the District Court in any ensuing enforcement proceeding, and certainly it recites that the party summoned and one "affected by a disclosure may appear or intervene" before the court. But this language, as well as subsequent comments in *Reisman*,[12] is permissive only and is not mandatory.

---

[12] "Furthermore, we hold that in any of these procedures before either the district judge or United States Commissioner, the witness may challenge the summons on any appropriate ground. This would include, as the circuits have held, the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution . . . as well as that it is protected by the attorney-client privilege . . . . In addition, third parties might intervene to protect their interests, or in the event the taxpayer is not a party to the summons before the hearing officer, he, too, may intervene." 375 U. S., at 449.

The language recognizes that the District Court, upon the customary showing, may allow the taxpayer to intervene. Two instances where intervention is appropriate were specified, namely, where "the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution" or where "it is protected by the attorney-client privilege." Thus, the Court recognized that intervention by a taxpayer in an enforcement proceeding might well be allowed when the circumstances are proper. But the Court did not there pronounce, even when confronted with a situation concerning an attorney's work product, that the taxpayer possesses an absolute right to intervene in any internal revenue summons proceeding. The usual process of balancing opposing equities is called for.

We, thus, are not in agreement with the holdings or implications in *United States* v. *Benford,* 406 F. 2d 1192, 1194 (CA7 1969); *United States* v. *Bank of Commerce,* 405 F. 2d 931 (CA3 1969); and *Justice* v. *United States,* 365 F. 2d 312, 314 (CA6 1966), to the effect that, under *Reisman,* a taxpayer may intervene as of right simply because it is his tax liability that is the subject of the summons. Instead, we agree with the opposing conclusion reached by the Fifth Circuit here, 418 F. 2d, at 1218, and in *In re Cole,* 342 F. 2d 5, 7–8 (CA2), cert. denied, 381 U. S. 950 (1965), and *O'Donnell* v. *Sullivan,* 364 F. 2d 43, 44 (CA1), cert. denied, 385 U. S. 969 (1966).

## VI

We turn, then, to Donaldson's particular situation. The material sought, as has been noted, consists only of Acme's routine business records in which the taxpayer has no proprietary interest of any kind, which are not the work product of his attorney or accountant, and which enjoy no established attorney-client or other privilege. Donaldson's only interest—and of course it looms

large in his eyes—lies in the fact that those records presumably contain details of Acme-to-Donaldson payments possessing significance for federal income tax purposes.

This asserted interest, however, is nothing more than a desire by Donaldson to counter and overcome Mercurio's and Acme's willingness, under summons, to comply and to produce records.

The nature of the "interest" urged by the taxpayer is apparent from the fact that the material in question (once we assume its relevance) would not be subject to suppression if the Government obtained it by other routine means, such as by Acme's independent and voluntary disclosure prior to summons, or by way of identifiable deductions in Acme's own income tax returns, or through Mercurio's appearance as a trial witness, or by subpoena of the records for trial. This interest cannot be the kind contemplated by Rule 24 (a)(2) when it speaks in general terms of "an interest relating to the property or transaction which is the subject of the action." What is obviously meant there is a significantly protectable interest. And the taxpayer, to the extent that he has such a protectable interest, as, for example, by way of privilege, or to the extent he may claim abuse of process, may always assert that interest or that claim in due course at its proper place in any subsequent trial. Cf. *United States* v. *Blue*, 384 U. S. 251 (1966).

We therefore hold that the taxpayer's interest is not enough and is not of sufficient magnitude for us to conclude that he is to be allowed to intervene. Were we to hold otherwise, as he would have us do, we would unwarrantedly cast doubt upon and stultify the Service's every investigatory move.

## VII

This conclusion could dispose of the case, for our main concern here is with the taxpayer's asserted right to intervene in the particular enforcement proceedings.

Donaldson, however, strenuously urges, in addition, that an internal revenue summons proceeding may not be utilized at all in aid of an investigation that has the potentiality of resulting in a recommendation that a criminal prosecution be instituted against the taxpayer. He argues that a summons so used is invalid and unenforceable because it is outside the scope of § 7602. The Government naturally argues the contrary.

The argument centers in the above-mentioned dictum in *Reisman*, 375 U. S., at 449:

> "[T]he witness may challenge the summons on any appropriate ground. This would include, as the circuits have held, the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution, *Boren* v. *Tucker*, 239 F. 2d 767, 772–773, as well as that it is protected by the attorney-client privilege . . . ."

We note initially that, despite the dictum, the courts of appeals in opinions issued since *Reisman* was decided, appear uniformly to approve the use of a summons in an investigation that is likely to lead to civil liability as well as to criminal prosecution.[13] The use of a summons also has been approved, even where it is alleged that its purpose is to uncover crime, if no criminal prosecution

---

[13] *Wild* v. *United States*, 362 F. 2d 206, 209 (CA9 1966); *McGarry* v. *Riley*, 363 F. 2d 421, 424 (CA1), cert. denied, 385 U. S. 969 (1966); *Venn* v. *United States*, 400 F. 2d 207, 210 (CA5 1968); *Sanford* v. *United States*, 358 F. 2d 685, 686 (CA5 1966); *United States* v. *Hayes*, 408 F. 2d 932, 936 (CA7), cert. denied, 396 U. S. 835 (1969); *United States* v. *Giordano*, 419 F. 2d 564, 568 (CA8 1969), cert. denied, 397 U. S. 1037 (1970); *United States* v. *Chikata*, 427 F. 2d 385, 390 (CA9 1970); *United States* v. *DeGrosa*, 405 F. 2d 926, 928 (CA3), cert. denied *sub nom. Zudick* v. *United States*, 394 U. S. 973 (1969); see *United States* v. *First Nat. Bank*, 274 F. Supp. 283, 285 (ED Ky. 1967), aff'd *sub nom. Justice* v. *United States*, 390 U. S. 199 (1968).

as yet has been instituted.[14]    On the other hand, it has been said, usually citing *Reisman,* that where the sole objective of the investigation is to obtain evidence for use in a criminal prosecution, the purpose is not a legitimate one and enforcement may be denied.[15]    This, of course, would likely be the case where a criminal prosecution has been instituted and is pending at the time of issuance of the summons.

It is precisely the latter situation—where the sole object of the investigation is to gather data for criminal prosecution—that is the subject of the *Reisman* dictum. This is evident from the fact that the dictum itself embraces the citation of *Boren* v. *Tucker,* 239 F. 2d 767, 772–773 (CA9 1956), an opinion in which, at the pages cited, the Ninth Circuit very carefully distinguished *United States* v. *O'Connor,* 118 F. Supp. 248 (Mass. 1953), a case where the taxpayer already was under indictment.    The *Reisman* dictum is to be read in the light of its citation of *Boren,* and of *Boren's* own citation of *O'Connor;* when so read, the dictum comes into proper focus as applicable to the situation of a pending criminal charge or, at most, of an investigation solely for criminal purposes.

Any other holding, of course, would thwart and defeat the appropriate investigatory powers that the Congress has placed in "the Secretary or his delegate."    When

---

[14] *United States* v. *Erdner,* 422 F. 2d 835, 836 (CA3 1970); *United States* v. *Michigan Bell Tel. Co.,* 415 F. 2d 1284, 1286 (CA6 1969); *Howfield, Inc.* v. *United States,* 409 F. 2d 694, 697 (CA9 1969); *United States* v. *Ruggeiro,* 425 F. 2d 1069, 1070 (CA9 1970), petition for certiorari pending *sub nom. Kyriaco* v. *United States,* No. 448, O. T. 1970.

[15] *Wild* v. *United States,* 362 F. 2d, at 208–209; *Venn* v. *United States,* 400 F. 2d, at 210; *United States* v. *Roundtree,* 420 F. 2d 845, 851 (CA5 1969).    See *United States* v. *O'Connor,* 118 F. Supp. 248 (Mass. 1953).

Grady's summonses were issued to Mercurio and to Acme, Donaldson was not under indictment and, indeed, no recommendation had been made for his prosecution. That he might be indicted and prosecuted was only a possibility, no more and no less in his case than in the case of any other taxpayer whose income tax return is undergoing audit. Prosecution will necessarily depend on the result of that audit and on what the examination and investigation reveal.

We bear in mind that the Internal Revenue Service is organized to carry out the broad responsibilities of the Secretary of the Treasury under § 7801 (a) of the 1954 Code for the administration and enforcement of the internal revenue laws.[16] See Internal Revenue Service Organization and Functions, § 1112 *et seq.*, 35 Fed. Reg. 2417 *et seq.* (1970). We further bear in mind that the Service has district offices, each with an audit division and a criminal division; that the Audit Division's program emphasizes the civil aspects of enforcement but embraces "participation with special agents of the Intelligence Division in the conduct of tax fraud investigations," § 1118.4; that the Intelligence Division enforces the criminal statutes affecting income and certain other taxes and develops information concerning alleged criminal violations, § 1118.6; that each assistant regional commissioner for intelligence develops programs for the investigation of alleged tax frauds and "certain other civil and alleged criminal violations of tax laws" and "approves or disapproves recommendations for prosecution," § 1114. (10); and that recommendations for prosecution are processed through the office of regional counsel and

[16] "§ 7801. Authority of Department of the Treasury

"(a) Powers and duties of Secretary.—Except as otherwise expressly provided by law, the administration and enforcement of this title shall be performed by or under the supervision of the Secretary of the Treasury."

by that office to the Department of Justice, § 1116 (3).
This demonstrates that the special agent may well con-
duct his investigation jointly with an agent from the Audit
Division; that their combined efforts are directed to both
civil and criminal infractions; and that any decision to
recommend prosecution comes only after the investiga-
tion is complete or is sufficiently far along to support
appropriate conclusions. The fact that a full-scale tax
fraud investigation is being made does not necessarily
mean that prosecution ensues when tax liability becomes
apparent.[17]

Congress clearly has authorized the use of the sum-
mons in investigating what may prove to be criminal
conduct. The regulations are positive. Treas. Regs.
§ 301.7602–1 (c)(4), 26 CFR § 301.7602–1 (c)(4). The
underlying statutes are just as authoritative. Section
6659 (a)(2) of the Code defines the term "tax" as used
in the Code and, hence, in the authorizing § 7602, to
include any addition or penalty. Section 7602 contains
no restriction; further, it has its ascertainable roots in
the 1939 Code's § 3614 and, also, § 3615 (a)–(c), which,
by its very language and by its proximity to § 3616 and
§ 3654, appears to authorize the use of the summons
for investigation into criminal conduct. There is no
statutory suggestion for any meaningful line of dis-
tinction, for civil as compared with criminal purposes,
at the point of a special agent's appearance. See Mathis
v. United States, 391 U. S. 1, 4 (1968). To draw a
line where a special agent appears would require the

---

[17] In 1969, 2,080 full-scale tax fraud investigations were under-
taken by the intelligence divisions. Only 1,049, or approximately
half, of these resulted in recommendations for prosecution. In the
1,031 cases not recommended for prosecution, some $20,000,000 in
deficiencies and penalties resulted and were earmarked for collection
civilly. 1969 Annual Report of the Commissioner of Internal Reve-
nue 28–31.

Service, in a situation of suspected but undetermined fraud, to forgo either the use of the summons or the potentiality of an ultimate recommendation for prosecution. We refuse to draw that line and thus to stultify enforcement of federal law. See *United States* v. *Kordel,* 397 U. S. 1, 11 (1970).

We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution.

*Affirmed.*

MR. JUSTICE BRENNAN, believing that under the facts of this case petitioner has established no right to intervene, concurs in the result.

MR. JUSTICE DOUGLAS, concurring.

The petitioner is the subject of an investigation by the Intelligence Division of the Internal Revenue Service which seeks to obtain information regarding financial transactions between the petitioner-taxpayer and the Acme Circus Operating Co. Summonses have been served on Acme and its accountant, Mr. Mercurio, in order to obtain testimony and to review records relating to petitioner. The petitioner is attempting to prevent Acme and Mercurio from complying with the summonses and to prevent the Federal District Court from enforcing those summonses. He sought to intervene in the enforcement proceedings, alleging that he has a vital interest in the litigation and that the summonses are not enforceable because they were issued improperly, to gather information for a criminal prosecution. The Government challenged his right to intervene. The District Court denied his motion to intervene and enforced the summonses but stayed its mandate. The Court of Appeals affirmed but continued the stay pending dis-

position by this Court. As yet there has been no hearing before the special agent, and this Court rules only that such a hearing may proceed on the summonses issued.

On these facts, I concur with the Court's decision. There is nothing in the language of § 7602 to limit the issuance of summonses to civil investigations. Therefore, even though petitioner is the subject of a criminal investigation, that is no bar to the issuance of the summonses. It is true that a person who is summoned may object that the production of records or testifying would violate *his* rights under the Fourth or Fifth Amendments. And a taxpayer would clearly have standing to raise a claim of violation of his constitutional rights if a third party were ordered to produce records belonging to the taxpayer. *United States* v. *Kordel,* 397 U. S. 1, 7; *Reisman* v. *Caplin,* 375 U. S. 440, 445. But it is difficult to see how the summoning of a third party, and the records of a third party, can violate the rights of the taxpayer, even if a criminal prosecution is contemplated or in progress. There is no right to be free from incrimination by the records or testimony of others.

The taxpayer may, however, protect his interests in any hearings held pursuant to § 7602. The Internal Revenue Service is clearly conducting a criminal investigation of the petitioner. That is the function of special agents.[1] The purpose of the summonses is to gather evidence for a criminal prosecution. At such

---

[1] Though the Solicitor General argues that an investigation by a special agent might have civil as well as criminal results, and the final decision to prosecute is not made until after an investigation, and approval by a regional counsel, he admits that the special agent is only assigned to the case "as a result of some allegation or indication of criminal conduct." Indeed the Intelligence Division "enforces the criminal statutes . . . by developing information concerning alleged criminal violations thereof . . . ." Internal Revenue Service Organization and Functions § 1118.6, 35 Fed. Reg. 2454.

"investigations" the summoned party may or may not be put under oath, at the discretion of the agent. He does have the right to be accompanied by counsel or an accountant. But the Internal Revenue Service has taken the position that the taxpayer who is being investigated is not entitled to be present at such- "ex parte investigations."[2] Moreover, he normally is not given notice of the issuance of the summons to the third party. Our decisions, however, make clear that the taxpayer has the right to be present at the hearing and to confront and cross-examine witnesses and inspect evidence against him.

The traditional federal method for gathering such information is the grand jury. Before that body there is no right to counsel and confrontation, but other protections are present, none of which exist here. The Court in a five-to-four decision relied on the analogy to the grand jury in *In re Groban*, 352 U. S. 330, 333, ruling that a person has no right to counsel when ordered to testify before a fire marshal. MR. JUSTICE BLACK stated, I think, the correct view in his dissent:

"[A]ny surface support the grand jury practice may lend disappears upon analysis of that institution. The traditional English and American grand jury is composed of 12 to 23 members selected from the general citizenry of the locality where the alleged crime was committed. They bring into the grand jury room the experience, knowledge and viewpoint of all sections of the community. They have no axes to grind and are not charged personally with the administration of the law. No one of them is a prosecuting attorney or law-enforcement officer ferreting out crime. It would be very difficult for

---

[2] An exception is made where the taxpayer asserts a privileged relationship with the person summoned, such as attorney-client.

officers of the state seriously to abuse or deceive a witness in the presence of the grand jury. Similarly the presence of the jurors offers a substantial safeguard against the officers' misrepresentation, unintentional or otherwise, of the witness' statements and conduct before the grand jury. The witness can call on the grand jurors if need be for their normally unbiased testimony as to what occurred before them.

"[T]he Fire Marshal's interrogation is, and apparently was intended to be, an important and integral part in the prosecution of the persons for arson or a similar crime. The rights of a person who is examined in connection with such crimes should not be destroyed merely because the inquiry is given the euphonious label 'administrative.'" 352 U. S., at 346–347, 349.

In *Anonymous* v. *Baker*, 360 U. S. 287, another five-to-four decision, the Court upheld the power of a judge in New York, acting as a one-man grand jury, to interrogate a witness without benefit of counsel, again relying on the distinction between investigation and prosecution. *Id.*, at 294. MR. JUSTICE BLACK again stated the correct view in his dissent that this procedure allowed a state official to lay the groundwork for a future prosecution without the protection of the presence of counsel.

In *Hannah* v. *Larche*, 363 U. S. 420, registrars who were accused of racial discrimination asked to be allowed to confront and cross-examine witnesses appearing before the Commission on Civil Rights. A majority found no such right because the Commission did not "adjudicate" or "issue orders" but only found facts. That criminal prosecutions might follow was "purely conjectural." The Solicitor General relies on this case

for approval of the procedures adopted by the Internal Revenue Service.

My view has not changed:

> "There is . . . only one way the Chief Executive may move against a person accused of a crime and deny him the right of confrontation and cross-examination and that is by the grand jury." 363 U. S., at 497.

> "[The grand jury is] the only accusatory body in the Federal Government that is recognized by the Constitution. I would allow no other engine of government, either executive or legislative, to take [its] place—at least when the right of confrontation and cross-examination are denied the accused as is done in these cases." *Id.,* at 499.

In *Jenkins* v. *McKeithen,* 395 U. S. 411, the Court dealt with another state investigative commission. There, however, the authority of the commission was limited to ascertaining facts regarding violations of *criminal* law and reporting its findings for criminal prosecution. There was no right to cross-examination for nonwitnesses and the right was limited for witnesses. The Court held that the commission exercised an accusatory function and was empowered to brand people as criminals. *Id.,* at 427–428. Therefore, due process required the commission to afford a person being investigated the right to confront and cross-examine the witnesses against him.

Given the identity of purpose of the investigations in *Jenkins* and this case, the rule of *Jenkins* clearly applies to the taxpayer in this suit. The requirements of procedural due process do not become more lax when federal rather than state criminal investigations are involved.

The proceeding contemplated in the summonses served on Acme and Mercurio is a criminal investigation. The

result will be a determination of whether to bring criminal charges. The special agent will perform the function traditionally reserved to the grand jury in our Federal Government. The teaching of the *Jenkins* case is that such a proceeding may not be held without affording the taxpayer an opportunity to attend, to cross-examine, and to rebut.