**UNITED STATES of America and Arthur A. Selby, Jr., Special Agent, Internal Revenue Service, Petitioners,**

**v.**

**John H. CUTTER, III, Respondent.**

**UNITED STATES of America and Arthur A. Selby, Jr., Special Agent, Internal Revenue Service, Petitioners,**

**v.**

**J. Marshall HAYWOOD, Respondent.**

Misc. Nos. 160, 161.

United States District Court, W. D. North Carolina, Charlotte Division.

March 11, 1974.

John H. Cutter, III, pro se.

J. Marshall Haywood, pro se; George S. Daly, Jr., Charlotte, N. C., for Haywood.

Keith S. Snyder, U. S. Atty., and Michael Scofield, Asst. U. S. Atty., Charlotte, N. C., for petitioners.

## ORDER

McMILLAN, District Judge.

The question before the court is whether to enforce summoneses which have been issued by the Internal Revenue Service against John H. Cutter, III, attorney for Paul and Jeannette Grier, taxpayers, and J. Marshall Haywood, attorney for Ralph Alexander, taxpayer. Respondents Cutter and Haywood resist the subpoenas, claiming on behalf of their clients that they are protected by the attorney-client privilege and by the Fifth Amendment privilege against self-incrimination.

The summonses were issued by the Internal Revenue Service under its 26 U. S.C. § 7602 investigatory authority to ascertain the correctness of a taxpayer's return and his tax liability. The attorneys have quite properly from a professional point of view resisted divulging the information sought until a judicial determination of their duty to do so has been made. A hearing was conducted.

From Attorney Haywood the Internal Revenue Service seeks evidence as to the amount of fees, if any, which Ralph Alexander, the taxpayer, has paid to Haywood, and also any records of financial transactions in which Haywood has handled money of the taxpayer, Alexander.

From Attorney Cutter the Internal Revenue Service seeks evidence as to the amount of fees, if any, which Cutter has been paid by the taxpayers Paul and Jeannette Grier, and also any records of financial transactions (especially one transaction involving the sale of real property located at 1014 Leigh Avenue

in Charlotte in August of 1970), in which Cutter has handled money of the taxpayers Grier.

■ The Fifth Amendment issue will be considered first. The government contends that Attorneys Haywood and Cutter have no right to assert their clients' Fifth Amendment claim since the information sought in each case is the testimony, books and records of the attorney rather than the client. This argument and its reliance on Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973) is not well founded. The information sought is solely information about clients Paul and Jeannette Grier and Ralph Alexander; and to characterize this information as "belonging to" their attorneys rather than to them is a distinction which disregards a lawyer's role as his client's agent. While Couch noted that an accountant may not ordinarily assert his employer's Fifth Amendment privilege against self-incrimination, it specifically distinguished a case involving an attorney's files stored in a corporation's possession, Couch, at 333, n. 16. See also Donaldson v. United States, 400 U. S. 517, 523, 91 S.Ct. 534, 27 L.Ed.2d 580. Ownership of the property sought is not the fundamental criterion for Fifth Amendment immunity. Rather, under Couch, the crucial factor is the citizen's Fourth Amendment expectation of protected privacy or confidentiality of communications between him and his lawyer.

■ The attorneys in this case may properly assert their clients' Fifth Amendment privilege to resist discovery of information they hold which relates solely to their legal advice or services to their clients.

Assuming that the Fifth Amendment privilege is properly invoked, the question remains whether it bars discovery of the information sought by the Internal Revenue Service.

Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971) approved the use of an Internal Revenue Service summons *issued in good faith* in an investigation that was likely to lead both to civil liability and to criminal prosecution. The reasoning in *Donaldson* appears to be that the Fifth Amendment's protection lies dormant until the criminal process "focuses" on the taxpayer. This is an uncomfortable way to draw the boundary of a constitutional right, because the person investigated has no control over when the government is "just looking" and when it has "focused," but the "focusing versus looking" theory was recently again acknowledged by the Supreme Court in *Couch, supra,* at 326.

In these cases the government claims that no criminal tax investigation has begun. Respondents do not dispute this but offer evidence to show that their clients have been investigated by local authorities "on suspicion" of violation of state laws without success, and that state law enforcement officials requested and the Internal Revenue Service undertook the investigation, not because of any evidence of tax fraud, but merely because state officials have been unable to turn their suspicions of wrongdoing into criminal prosecutions.

■■ *If true,* this evidence shows a practice that should itself be investigated. The broad width of discretion given tax officers is for legitimate tax investigation and is not a license for official harassment of the citizenry. The pre-"focus" exception allowed by *Couch* is dangerous enough without extending it to the aid of investigations by state law enforcement authorities of criminal matters outside the tax area.

Pending further orders of court, it is therefore ordered:

1. That enforcement of the subpoenas be stayed.

2. That petitioners, if they desire an evidentiary hearing on the contentions of respondents, including questions of misuse or abuse of Internal Revenue Service power, file a request to that effect by April 1, 1974.

3. That decision of other issues in the petitions and the responses be held in abeyance.