666 F.2d 312
 82-1 USTC P 9178
 UNITED STATES of America and Internal Revenue Service
Officer, David L. Ackley, Plaintiffs-Appellees
Cross-Appellants,
v.
UNIVERSITY SAVINGS ASSOCIATION and Emily Clark, Collection
Supervisor, Defendants,
Paul V. Watson, et al., Intervenors-Appellants Cross-Appellees.
 No. 81-2019.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 28, 1982.
 
 Jeffrey H. Hubbard, Houston, Tex., for Paul V. Watson, et al.
 Jim Ezer, Asst. U. S. Atty., Houston, Tex., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Section, Charles E. Brookhart, William A. Whitledge, Attys., Dept. of Justice, Washington, D. C., for intervenors-appellants cross appellees.
 Appeals from the United States District Court for the Southern District of Texas.
 Before GEE, GARZA and SAM D. JOHNSON, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 The United States of America and Internal Revenue Service Agent David L. Ackley brought a consolidated action to enforce seven Internal Revenue Service summonses against six financial institutions and one accounting firm to obtain records pertaining to Paul V. and Sharon E. Watson ("Watsons") in connection with an investigation of the tax liability of Paul V. Watson for the years 1976 through 1978. The trial court denied enforcement of the summonses and awarded attorneys' fees to the Watsons. We believe that the district court erred in refusing to enforce the summonses, and, therefore, we reverse the judgment of the court and remand the case for proceedings consistent with this opinion.
 
 
 2
 During an audit of a related partnership tax return, the Examination Division of the Internal Revenue Service was unable to find any record indicating that the Watsons had filed tax returns for the years 1976-78. Accordingly, the Examination Division referred the case to the Criminal Investigation Division to investigate possible tax fraud, and Special Agent Ackley was assigned to conduct the investigation. Ackley determined that the case should be investigated jointly with the participation of the Examination Division and then requested the assignment of a revenue agent to investigate the Watsons' civil tax liabilities. In September 1979, Ackley received documents indicating that the Watsons were tax protestors, and he began to follow the IRS procedures for investigating tax protestors, as set out in the manual supplement entitled "Examination and Investigation of Illegal Protest-Type Activities."[1] Although these procedures relate only to a criminal investigation, a revenue agent was still assigned to investigate the civil liabilities of the Watsons. Unable to obtain information from the Watsons necessary to determine their correct tax liabilities, Ackley issued the summonses here in question.
 
 
 3
 The Watsons, citing United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), contested the enforcement of the summonses on the ground that the summonses authorized under 26 U.S.C. § 7602[2] may not be used for a solely criminal investigation. Because Special Agent Ackley, himself, was pursuing a criminal investigation only, the Watsons believed that he could not use the summonses to aid his investigation. However, this is not a proper reading of the holding in LaSalle. In LaSalle the Seventh Circuit had affirmed the district court's refusal to enforce a summons because a special agent testified that his investigation had no civil purpose and was concerned only with obtaining information with which to recommend that the taxpayer be prosecuted. The Supreme Court, however, concluded that the improper purpose of one special agent was not dispositive of the institutional commitment by the IRS to collect taxes and that enforcement of the summons should be denied only if the Service, in an institutional sense, had abandoned its pursuit of the taxpayer's civil liability. 437 U.S. at 319, 98 S.Ct. at 2368.
 
 
 4
 In Donaldson v. United States, 400 U.S. 517, 535, 91 S.Ct. 534, 544, 27 L.Ed.2d 580 (1971), the Supreme Court noted that Congress has authorized use of the summons for criminal investigations under 26 U.S.C. § 7602 and the corresponding regulations. Congress has created a law enforcement system in which the criminal and civil elements of tax liability are inherently intertwined. LaSalle, 437 U.S. at 309, 98 S.Ct. at 2363. When an investigation examines the possibility of criminal misconduct, it also necessarily inquires about the appropriateness of assessing the 50 percent tax liability.[3] The legislative history of the Internal Revenue Code supports the conclusion that Congress intended to design a system with inter-related criminal and civil elements. Id. at 310, 98 S.Ct. at 2364. "For fraud investigation to be solely criminal in nature would require an extraordinary departure from the normally inseparable goals of examining whether the basis exists for criminal charges and for the assessment of civil liabilities." Id. at 314, 98 S.Ct. at 2366. Such a departure did not occur in this case. The uncontroverted evidence on this issue was the testimony of the special agent that he was conducting a joint investigation with the assistance of a revenue agent of the Examination Division to determine the taxpayers' correct tax liability and to determine whether evidence of any tax crimes existed. The district court's denial of enforcement on the sole ground that the "present posture" of the IRS was focused on its criminal investigation is, thus, contrary to the holding of LaSalle. The IRS clearly may use its summons authority to aid in criminal investigations, and only in the rare situation where the Service abandons its pursuit of civil tax liability will the summons not be enforced.
 
 
 5
 The district court also awarded attorneys' fees to the Watsons, concluding that the IRS acted in bad faith in seeking enforcement of the summonses. In a suit brought by the United States to enforce a provision of the Internal Revenue Code, the district court may make a discretionary award of attorneys' fees to the party prevailing against the government if the taxpayer proves that the action was frivolous, unreasonable, or without foundation. 42 U.S.C. § 1988; Jones v. United States, 613 F.2d 1311, 1313 (5th Cir. 1980). We find that the district court abused its discretion in awarding the attorneys' fees. There is no evidence of unreasonable conduct, let alone bad faith, on the part of the government. In any event, the Watsons are no longer the prevailing party and are therefore not entitled to attorneys' fees.
 
 
 6
 REVERSED AND REMANDED.
 
 
 
 [1]
 Manual Supplement 9G-93 provides in § 6.02:
 Cases involving illegal tax protests have been associated with the following violations:
 ....
 b. Title 18 U.S.C.
 (1) Section 2-Principles;
 (2) Section 287-False, Fictitious or Fraudulent Claims;
 (3) Section 371-Conspiracy to Commit Offense or Defraud the United States;
 (4) Section 1001-Statement of Entries Generally; and
 (5) Section 1503-Influencing or Injuring Officer, Juror or Witness Generally.
 c. The Chief CID will insure that special agents are cognizant of the elements of these offenses as they apply to cases involving illegal tax protestors.
 
 
 [2]
 26 U.S.C. § 7602 provides:
 For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized-
 (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
 (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
 (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.
 
 
 [3]
 26 U.S.C. § 6653(b) provides:
 If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.