**SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,**

Richard James French d/b/a Neild Cruikshank & Co.-Pacific; Jose Pascual; Harry C. Polonitza & Co.; Steven S. Mitchell and Alan Schmidt, French Plaintiffs-Appellees,

David Chan; Opex Investments Inc.; Rudolf M. Binnewies; William A. Charles; Sold Inc.; Montgomery and Mader, N.A. Montgomery; Richard E. Mader and Craig A. Resnick, Charles Plaintiffs-Appellees,

v.

CERTAIN UNKNOWN PURCHASERS OF THE COMMON STOCK OF AND CALL OPTIONS FOR THE COMMON STOCK OF SANTA FE INTERNATIONAL CORPORATION; Credit Suisse; Swiss American Securities, Inc.; Citibank, N.A.; Lombard, Odier & CIR; Morgan Guaranty Trust Company of New York; Swiss Bank Corporation; Drexel Burnham Lambert, Inc.; The Chase Manhattan Bank, N.A.; Moseley, Hallgarten, Estabrook & Weeden, Inc.; Faisal Al Massoud Al Fuhaid, Defendants-Appellees,

v.

Alan E. ZIMMER, Jr., and John Olaques, Objectors-Appellants.

Nos. 456, 608 and 642, Dockets 86–6144, 86–6164 and 86–6172.

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1986.

Decided May 6, 1987.

Arthur M. Handler, New York City (Robert S. Goodman and Laura A. Larks, Golenbock and Barell, New York City, Charles R.

Breyer and Joseph C. Spero, Coblentz, Cahen, McCabe & Breyer, San Francisco, Cal., of counsel), for objector-appellant Zimmer.

George B. Recile, Metairie, La., for objector-appellant Olaques.

Daniel L. Goelzer, General Counsel, S.E.C., Washington, D.C. (Paul Gonson, Solicitor, Jacob H. Stillman, Associate General Counsel, Rosalind C. Cohen, Asst. General Counsel and Sheila M. Barry, S.E.C., Washington, D.C., of counsel), for plaintiff-appellee S.E.C.

Herbert E. Milstein, Washington, D.C. (Steven J. Toll and Patricia F. Bak, Cohen, Milstein & Hausfeld, Washington, D.C., Richard J. Kilsheimer, Kaplan, Kilsheimer & Foley, New York City, of counsel), for French plaintiffs-appellees.

Marvin Wexler, Kornstein, Veisz and Wexler, New York City, Donald E. Schlotz, Armour, St. John, Wilcox, Goodin & Schlotz, Jon B. Sigerman, San Francisco, Cal., on the brief, for Charles plaintiffs-appellees.

James D. St. Clair, J. Barry Morrissey and Thomas N. O'Connor, Hale and Dorr, Boston, Mass., William K. Dodds, Olwine, Connolly, Chase, O'Donnel & Weyher, New York City, on the brief, for defendants-appellees Unknown Purchasers.

Before MESKILL, KEARSE and ALTIMARI, Circuit Judges.

MESKILL, Circuit Judge:

Objectors-appellants Alan E. Zimmer and John Olaques appeal from a final judgment of the United States District Court for the Southern District of New York, Conner, J., denying with prejudice their objections to an order of the district court establishing a claims fund and claims procedure for the distribution of disgorged profits. On February 26, 1986, the district court entered an order approving a settlement among the Securities and Exchange Commission (SEC), various defendants who traded in Santa Fe International Corporation (Santa Fe) stock and call options on inside information, and injured plaintiffs who sold stock and call options to defendants. Zimmer and Olaques, claiming to be damaged as a result of defendants' activities, objected to the plan's proposed distribution of $7,841,844 in disgorged profits. The district court, however, found that the plan of settlement was fair in all respects. We affirm.

## BACKGROUND

On October 26, 1981, the SEC filed an enforcement action in the United States District Court for the Southern District of New York alleging violations of section 10(b) of the Securities Exchange Act of 1934 (Act), 15 U.S.C. § 78j(b) (1982), and Rule 10b-5, 17 C.F.R. § 240.10b-5. The SEC alleged that certain unknown persons purchased Santa Fe stock and call options on inside information concerning a proposed merger between Santa Fe and Kuwait Petroleum Company. Apparently, defendants were aware that a merger offer would be made for all of the common stock of Santa Fe on October 5, 1981. Illegal trading in Santa Fe securities was alleged to have taken place from September 21 to October 1, 1981, otherwise known as the Window Period. The complaint filed by the SEC sought injunctions against future violations of the Act as well as disgorgement of illegal profits acquired during the Window Period. The district court entered a temporary restraining order on October 26, 1981, freezing all profits of defendants subject to disgorgement. This order was followed by a preliminary injunction, which continued the freeze until the case was settled on February 26, 1986.

While the SEC's enforcement action was pending in the Southern District, two groups of private investors brought civil suits against defendants to recover damages based on the same illegal trading in Santa Fe securities. The first group of investors (French plaintiffs) commenced an action in the Southern District of New York. The second group (Charles plaintiffs) instituted their action in the United States District Court for the Northern District of California. Both actions were terminated when, in early February 1986, the SEC negotiated a settlement with defendants also settling the claims of the Charles

and French plaintiffs. J.App. at 65–82. Disgorged profits were paid into a claims fund that was developed as part of the separate SEC enforcement action.

After individual defendants were identified in the SEC action, the parties agreed to a disgorgement of profits in the amount of $7.8 million. A plan of distribution was proposed that sought to recompense over 1,900 potential claimants. The plan, which concluded a year long series of negotiations, was submitted to the district court on a joint motion of the parties for final approval.

Under the proposed plan, two Claims Funds would be established and managed by a court appointed Master. Claims Fund A would provide funds for claims by option traders while Claims Fund B would satisfy the claims of those who traded in Santa Fe common stock. Claims Fund A was further divided into two subfunds. Subfund 1 represented the claims of those who sustained losses in direct options trades with defendants. Subfund 2 represented the claims of those who did not deal directly with defendants, but sustained losses as a result of options dealings during the Window Period. Only claimants who suffered actual out-of-pocket losses as a result of defendants' illegal trading would be permitted to sustain a claim under the plan. J.App. at 129.

The settling parties agreed upon the following distribution of the $7.8 million in disgorged profits. First, approximately $4.5 million would be allocated to Claims Fund A with $2 million earmarked for Subfund 1 and $2.5 million directed to Subfund 2. Second, the plan provided that $492,317 would be paid into Claims Fund B. All persons making claims under either Claims Fund would receive a *pro rata* share of the proceeds based on the size of their loss. Finally, a direct payment of $2.85 million would be made to the Charles and French plaintiffs as part of a separate settlement of their suits.

On June 13, 1986, the district court held a hearing "to consider any objections of any claimant to the claims procedure proposed by [the plan of settlement]." J.App.

at 127–28. Objectors Olaques and Zimmer appeared at the hearing and urged Judge Conner to reject the plan. Both objectors argued that separate direct payments to the Charles and French plaintiffs were unwarranted and that, instead, the civil plaintiffs should be made to participate in the distribution on a *pro rata* basis. Olaques and Zimmer also argued that the plan's definition of "actual loss" unfairly excluded them from participation in the settlement. Judge Conner found that the settlement agreement was fair and reasonable, denied Olaques' and Zimmer's objections and entered an order approving the agreement. This appeal followed.

## DISCUSSION

Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa (1982), confers general equity powers on district courts to remedy violations of the Act. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1103 (2d Cir.1972); *SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1307 (2d Cir.), *cert. denied*, 404 U.S. 1005, 92 S.Ct. 562, 30 L.Ed.2d 558 (1971). "Once the equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation, the court possesses the necessary power to fashion an appropriate remedy." *Manor Nursing*, 458 F.2d at 1103. The disgorgement remedy approved by the district court in this case is, by its nature, an equitable remedy. According to the Supreme Court, "[i]n shaping equity decrees, [a] trial court is vested with broad discretionary power; appellate review is correspondingly narrow." *Lemon v. Kurtzman*, 411 U.S. 192, 200, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973). Therefore, we limit our review of Judge Conner's order approving the settlement to determining whether there was an abuse of discretion.

### A. *Zimmer's Claim*

■ Objector Zimmer claims that he was excluded from the fund because the entire settlement plan was wrongfully limited to compensation of claimants who sustained

out-of-pocket losses.[1]  On October 1, 1981, however, Zimmer still maintained a net profit in Santa Fe options despite a $1 million reduction in his profits during the Window Period.  Therefore, he suffered no out-of-pocket losses as required by the plan.  Nevertheless, Zimmer claims that any plan that fails to compensate investors for losses, of whatever character, violates the policy of the securities laws to protect investors.  Zimmer asserts that Judge Conner abused his discretion by approving a plan of settlement that was not fair and equitable to all parties.

■  Judge Conner did not abuse his discretion in approving the settlement agreement.  The size of the disgorgement pool was limited.  In total, Claims Fund A and B provided less than $5 million to recompense over 1,900 potential claimants.  It is apparent that Judge Conner believed that the most grievously injured claimants should receive the greatest share of the fund.  Unnecessary dilution of the pool was to be avoided.  With this in mind, Judge Conner noted that certain plaintiffs were devastated by defendants' trading.  Some were driven out of business entirely.  J.App. at 242.  Zimmer, on the other hand, "is a richer man today than if he had never bought or sold any Santa Fe options."  J. App. at 249.  Although Judge Conner acknowledged that other alternatives were practicable, he concluded: "I cannot fault the fairness of the SEC's policy decision to limit the benefits of the settlement fund to those who had an overall [l]oss.  I think it's fair."  J.App. at 248.

The equities clearly support Judge Conner's decision.  Zimmer's claim of $1 million in damages would result in substantial dilution of the $5 million fund.  Each claimant's *pro rata* share of disgorged profits would be significantly reduced if Zimmer's

claims and others in his position were allowed.  As an experienced market professional, Zimmer successfully employed hedging strategies to limit his exposure to loss.  He is indeed fortunate to have suffered less than unsophisticated investors during the Window Period.  It was not unreasonable for the agreement to compensate only those investors who suffered actual out-of-pocket losses.  We conclude, therefore, that as to Zimmer the district court did not abuse its discretion in approving this agreement.

### B.  *Olaques' Claims*

Olaques argued in the district court that he was harmed by defendants' non-disclosure of inside information because he held option contracts that remained "open" during the Window Period when insider trading adversely affected the market.  Judge Conner rejected Olaques' claim and also denied his motion to intervene as a party under Fed.R.Civ.P. 24(a).  We affirm the denial of the motion to intervene and dismiss Olaques' appeal for lack of standing.

■  Generally, only a party to an action has standing to appeal.  *Martin-Trigona v. Shiff,* 702 F.2d 380, 385 (2d Cir.1983);  9 Moore's Federal Practice, ¶ 203.06 at 3–20 (2d ed. 1986).  To intervene as a party under Rule 24(a), Olaques must show that he "claims an interest relating to the property or transaction which is the subject of the action."  No such interest has been demonstrated.

■  Disgorgement of profits under the settlement agreement was based solely on defendants' potential Rule 10b–5 liability for insider trading during the Window Period.  Olaques completed his transactions by September 21, 1981, and did not trade during the Window Period.  Because Olaques

---

**1.** Although Zimmer did not file a motion to intervene as a party to the district court action, he nevertheless has standing to appeal pursuant to *Hispanic Society of the New York City Police Department, Inc. v. New York City Police Department,* 806 F.2d 1147, 1152 (2d Cir.1986).  Here, the district court judgment may affect the ability of Zimmer to pursue his Rule 10b–5 claims against defendants.  In *Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156, 172 (2d Cir.1980), we

held that disgorgement of profits is the appropriate measure of damages in insider trading cases.  Whether defendants' disgorgement under the settlement agreement in this case precludes Zimmer from maintaining a separate action for damages is a question that we need not, and do not, reach.  For purposes of standing, it is sufficient to note that Zimmer asserts an interest that may be affected by the trial court's judgment.

was not induced by persons acting on in-side information to purchase or sell securities during this period, he has no claim under Rule 10b–5 to the settlement fund and no "significantly protectable interest" in the litigation that might be impaired by the disposition of this case. *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). Therefore, the district court did not err in denying Olaques' motion to intervene and, because Olaques is not a party to this action, he lacks standing to challenge the settlement order on appeal.

C. *Other Claims*

Zimmer claims that the settlement reached between the defendants and the Charles and French plaintiffs should be set aside. Zimmer contends that $2.8 million was taken from the disgorgement fund of over $7 million and paid directly to plaintiffs without the objectors' knowledge or consent. We do not reach the merits of Zimmer's claim in this regard, however. Our conclusion that Zimmer is not entitled to participate in any part of the fund eliminates any interest Zimmer might have had in the funds to be paid to the Charles and French plaintiffs.

## CONCLUSION

Judge Conner did not abuse his discretion in approving a complex settlement agreement designed to compensate over 1,900 investors in Santa Fe securities. Nothing prevented Zimmer and Olaques from bringing their own action against defendants, just as the French and Charles plaintiffs did. They should not expect to be able to stand aside and watch others incur the expenses of lengthy litigation and then upset the results of those efforts.