**UNITED STATES of America et al.**

**v.**

**NORTHWEST PENNSYLVANIA BANK & TRUST COMPANY.**

**Civ. A. No. 99–72 Erie.**

United States District Court,
W. D. Pennsylvania.

Jan. 25, 1973.

2. NLRB v. N. Y. Merchandise Co., 134 F.2d 949, 952 (2d Cir. 1943).

See also D.C., 355 F.Supp. 605.

Richard L. Thornburgh, U. S. Atty., for plaintiffs.

James B. Brown, Pittsburgh, Pa., William McFate, Oil City, Pa., for defendant.

## OPINION

KNOX, District Judge.

This is a companion case to Budd L. Rice, et al. v. Internal Revenue Service, et al., Civil Action No. 58–72 Erie in this court wherein, after hearing, the court on July 27, 1972, vacated a Temporary Restraining Order and denied a Preliminary Injunction to restrain Northwest Pennsylvania Bank and Trust Company, Oil City, Pennsylvania (herein called the bank) from turning over certain books, records and documents pertaining to the plaintiff and to restrain the Internal Revenue Service and two individual defendants from inspecting these records.

Following the order of July 27, 1972, the plaintiffs appealed to the Court of Appeals for the Third Circuit and at their behest, this court continued the Temporary Restraining Order in effect pending the appeal.

On October 30, 1972, the government and the special agents of the Internal Revenue Service named as petitioners above, filed this petition at 99–72E to enforce an Internal Revenue Summons previously served on the bank on July 13, 1972, and to require it to produce the records in question. This proceeding to enforce the summons was brought pursuant to Sections 7402 and 7604 of the Internal Revenue Service Code (26 U.S.C. §§ 7402 and 7604). Upon the filing of this petition, the court entered an order to show cause and fixed November 20, 1972, at Erie, Pennsylvania as the time and place of hearing. This immediately triggered instantaneous and varied responses from the taxpayers including first a petition to hold Internal Revenue Service and its agents in contempt which the court has denied by an opinion filed January 24, 1973, in 58–72E. The taxpayers secondly resorted to the Court of Appeals at 72–1816 seeking an injunction pending appeal and at 72–2008 seeking a writ of prohibition against this member of the court to restrain the hearing of the petition to enforce the summons. The taxpayers thirdly filed a motion for leave to intervene in the summons proceeding at 99–72E and also filed a motion for summary judgment in that proceeding. The motion to intervene and petition for citation for contempt were likewise assigned for hearing on November 20, 1972. On November 17, 1972, the Court of Appeals denied the motion for injunction pending appeal, without prejudice, at 72–1816 and likewise entered an order denying the petition for writ of prohibition, without prejudice to the application for intervention in the summons enforcement action. The court further said:

"... We express no opinion as to the right of petitioners to intervene there nor do we reach the merits of petitioners' claims that they are entitled to prevent disclosure by the Northwest Pennsylvania Bank and Trust Co. of records of their accounts and transactions."

The hearings therefore proceeded as scheduled at Erie on November 20 and 21, 1972, and the case was taken under advisement by the court having been fully briefed by both sides.

While the matter was so under advisement, counsel for the taxpayers brought to the court's attention a letter received by certified mail by the leading taxpayer under date of December 6, 1972, from the Chief of Intelligence Division, Internal Revenue Service, Pittsburgh, Pennsylvania, indicating that the serv-

ice was considering recommending institution of criminal proceedings with respect to the years 1967–1970, both inclusive. Since this letter was not a part of the record but represented something which had developed since the hearing and which might have a bearing upon the court's decision in these matters, it was directed that unless the government consented to the incorporation of this letter in the record, a further hearing would be held relative to its admissibility at Erie on December 27, 1972. This further hearing was held as scheduled at which time the government objected strenuously to the incorporation of this letter in the record but the court being of the opinion that this cast a different light at least upon the motion to intervene under the decision of the United States Supreme Court in Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971) admitted the letter subject to the government's objection. A copy of this letter appears in Appendix I attached to this opinion.

The matter is now before us for final decision on (1) taxpayer's motion to intervene and (2) petition of Internal Revenue Service for enforcement of its summons.

The summons served July 13, 1972, which is the subject of the proceeding appears as Appendix II to this opinion. It has attached to it a list of 41 names including those named as participants in what may or may not be joint accounts. The government seeks as stated all ledger sheets, deposit tickets, cancelled checks, withdrawals and debit memos concerning these named individuals and also "family members" who are not defined in the summons. We thus cannot say exactly how many dozens of individuals are covered by this summons and whose records the government seeks to inspect in this proceeding, for the period January 1, 1966 through December 31, 1971, a period of six years. According to the testimony of the bank officials, the cancelled checks for each day are microfilmed as they come in and are in no

particular order being fed into the machine "helter skelter". In the South Side Office of the bank with which we are particularly concerned, although the summons asks this information for all branches, the items run to approximately 3500 per day and for all offices a total of approximately 10,000,000 per year. In order to comply with the summons, the bank would have to examine approximately 60,000,000 items. The bank has attempted to cooperate with Internal Revenue Summons to the extent of assembling the ledger sheets and deposit tickets for certain named individuals and the bank was ready to turn these over when the original Temporary Restraining Order was issued on July 18, 1972. The bank filed with the Court of Appeals a statement indicating it was a nominal party only and was ready to comply with the orders of that court and of this court. It is clear of course that the bank is in the middle, as stated in its brief, between the demands of Internal Revenue Service and instructions by the taxpayer not to turn over these records under threat of suit for violating its confidential duty to its depositors. The bank does claim that the performance required of it is unspecific in its demands and will be burdensome in compliance and that the summons should specifically state just what the Internal Revenue Service seeks.

The bank does have the right to complain of unreasonable burdens thrust upon it in attempting to comply with a summons. Our Court of Appeals said in United States v. Dauphin Deposit Trust Co., 385 F.2d 129 (3d Cir. 1967) that the bank does have standing to complain of unreasonable burdens thrust upon it and said "the Government is not entitled to go on a fishing expedition through appellant's records. It must identify with some precision the documents it wishes to inspect". It was there held that requests for records regarding four customers over a period of four years would not be considered unduly burdensome. In the present case, however, there are at least 41 and possibly more

customers involved over a period of six years and the evidence indicates an intolerable burden upon the bank. We will therefore limit the enforcement of the summons accordingly.

It should be noted that the Internal Revenue Service has not disclosed the connection of the other named individuals with the investigation of the tax liability of Mr. Rice and members of his family. At the hearing, the Internal Revenue Service objected to inquiry into the nature of its investigation and what facts had been developed thus far and these objections were sustained on the grounds that the government would not have to disclose the details of its investigation in order to secure enforcement of its summons, since this might amount to requiring the government to divulge the evidence on which a prosecution might rest when the matter was still in the investigatory stage. Likewise, when Mr. Rice took the stand at the hearing on December 27, 1972, to testify as to the receipt of the letter (Appendix I) and what had transpired thereafter, he could not be cross examined generally on his tax liability or details of possible tax evasion, this being outside the scope of his direct examination and subject to the protection of the Fifth Amendment. For present purposes, we assume the truth of the assertion of Internal Revenue Service that the investigation so far indicates that transactions with these individuals may have a bearing on the tax liability of Rice and the members of his family. Any other ruling would stultify and block every investigation before it was completed.

This brings us to the main questions, the right to intervene and the right of the government to enforce the summons. The government derives its right to issue this summons from 26 U.S.C. § 7602 [1] and the right to secure enforcement thereof under 26 U.S.C. § 7604(b).[2]

We previously pointed out in the opinion of July 27, 1972, at 58–72E there was no basis for equitable relief in that case "but that all questions must be dealt with in an enforcement proceeding if such be brought". We further observed

---

1. "Examination of books and witnesses. For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—
(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or *any person having possession, custody, or care of books of account containing entries relating to the business of the person liable* for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."

2. "(b) Enforcement—Whenever any person summoned under section 6420(e)(2), 6421(f)(2), 6424(d)(2), 6427(e)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary or his delegate may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience."

that the case was governed by Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), as more recently fully explained in this area of the law and reviewed in the opinion of Mr. Justice Blackmun in Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). We also now have the opinion delivered by Mr. Justice Powell in Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548, (1973) holding that a summons was properly enforceable against an accountant to whom the taxpayer had surrendered possession of her records and that there was no constitutional bar to the production of these records by the accountant even though the investigation might entail possible criminal as well as civil consequences.

In Couch, the court quoted at length from Donaldson and in Footnote 8 said "Donaldson cautioned only that the summons be issued in good faith and *prior to a recommendation for criminal prosecution*". It is further pointed out that the taxpayer was not compelled to do anything, only the accountant was being subjected to the summons and there was no claim that he might be incriminated. The court further said:

"The divulgence of potentially incriminating evidence against petitioner is naturally unwelcomed. But petitioner's distress would be no less if the divulgence came not from her accountant but from some other third party with whom she was connected and who possessed substantially equivalent knowledge of her business affairs. The basic complaint of petitioner stems from the fact of divulgence of the possibly incriminating information, not from the manner in which or the person from whom it was extracted. Yet such divulgence, where it did not coerce the accused herself, is a necessary part of the process of law enforcement and tax investigation."

The court has been troubled by the injection into this proceeding while under advisement of the Internal Revenue Service letter of December 6, 1972. Previously, the Internal Revenue Service had taken the position in the hearings in these cases that while a special agent had been brought into the case and the duties of a special agent, of course, are to investigate all varieties of tax fraud, nevertheless the special agent was only working on the audit with the field agent and that no decision to recommend for criminal prosecution had been made. It was also pointed out that there might be a determination of civil fraud without necessarily deciding to recommend criminal prosecution. This testimony was all undermined by the action of the Service in sending out the letter of December 6. It will be observed, however, that a close reading of the letter of December 6 indicates that the matter was still in abeyance, that no recommendation of criminal prosecution had as yet been made nor indeed, according to the testimony, had it as yet been forwarded to the regional director. From the letter, it appears that only a matter of recommendation was under consideration and the taxpayer was given the usual opportunity to appear and make such representations against this recommendation as he might deem proper. The court, however, has been disturbed by the footnote in Couch and by certain language contained in Donaldson.

Donaldson is clear to the effect that the bank's records are not the taxpayer's and he has no proprietary interest of any kind in them. The court said:

"Each of the summonses here, we repeat, was directed to a third person with respect to whom no established legal privilege, such as that of attorney and client, exists, and had to do with records in which the taxpayer has no proprietary interest of any kind, which are owned by the third person, which are in his hands, and which relate to the third person's business transactions with the taxpayer."

The court indicated that there might be a different result if recommendation for criminal prosecution had been made but otherwise the taxpayer had no standing to prevent the enforcement of summons against a third party bank and that the taxpayer had no right to intervene in the enforcement proceedings. The court, however, said (400 U.S. 530, 91 S.Ct. 542) "the language recognizes that the District Court, upon the customary showing, may allow the taxpayer to intervene. Two instances where intervention is appropriate were specified, namely, where 'the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution' or where 'it is protected by the attorney-client privilege.' Thus, the Court recognized that intervention by a taxpayer in an enforcement proceeding might well be allowed when the circumstances are proper". The Donaldson court went on to disapprove of United States v. Bank of Commerce, 405 F.2d 931 (3d Cir. 1969) which indicated that the taxpayer may intervene as a matter of right.

In holding that the taxpayer in Donaldson had no right to intervene the court said: "Were we to hold otherwise, as he would have us do, we would unwarrantedly cast doubt upon and stultify the Service's every investigatory move . . . ." Any other holding, of course, would thwart and defeat the appropriate investigatory powers that the Congress has placed in the Secretary or his delegate. The court, in concluding, summed up the situation as follows:

"Congress clearly has authorized the use of the summons in investigating what may prove to be criminal conduct. The regulations are positive. Treas.Regs. § 301.7602–1(c)(4), 26 CFR § 301.7602–1(c)(4). The underlying statutes are just as authoritative. Section 6659(a)(2) of the Code defines the term 'tax,' as used in the Code and, hence, in the authorizing § 7602, to include any addition or penalty. Section 7602 contains no re-

striction; further, it has its ascertainable roots in the 1939 Code's § 3614 and, also, § 3615(a)–(c), which, by its very language and by its proximity to § 3616 and § 3654, appears to authorize the use of the summons for investigation into criminal conduct. There is no statutory suggestion for any meaningful line of distinction, for civil as compared with criminal purposes, at the point of a special agent's appearance. See Mathis v. United States, 391 U.S. 1, 4, 88 S.Ct. 1503, 1504, 20 L.Ed.2d 381 [384] (1968). To draw a line where a special agent appears would require the Service, in a situation of suspected but undetermined fraud, to forgo either the use of the summons or the potentiality of an ultimate recommendation for prosecution. We refuse to draw that line and thus to stultify enforcement of federal law. See United States v. Kordel, 397 U.S. 1, 11, 90 S. Ct. 763, 769, 25 L.Ed.2d 1 [10], (1970).

"We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution."

Considering this case in the light of Reisman, Donaldson and Couch, we have concluded that while there has been as yet no formal recommendation of prosecution, nevertheless the investigation is sufficiently far along that it appears that under these circumstances in the light of what was said in Donaldson and Couch, we should allow the taxpayer to intervene and be heard. We had previously at the November 20, 1972, hearing, permitted the taxpayer to participate in the proceedings subject to determination of his right to intervene and in order to protect his rights in the matter and assure him of his right to appeal if he chooses, we will allow the intervention.

■ It is still the opinion of the court, however, that this does not mean that we should refuse enforcement of the summons at least to an extent which will not be burdensome upon the bank and that to refuse such enforcement would "stultify the government's investigatory moves". As is clear under Donaldson, the taxpayer has no proprietary interest in these bank records. These records are not his property but the property of the bank. There is no privilege such as attorney-client or even attorney's work product operating in this case and therefore no legal grounds have been presented to stay the enforcement of the proceeding.

■■ One matter remains to be dealt with and that is the scope of the Internal Revenue Summons. It is the rule that the statute dealing with the examination of books of taxpayers and witnesses ought to be liberally construed. United States v. Amer. Standard Remodeling Corp., 252 F.Supp. 690, 693 (W.D.Pa. 1966); Falsone v. United States, 205 F.2d 734 (5th Cir. 1953). This should not, however, allow the government to wander at will through all the records of the bank. The Internal Revenue Service must specify what records it wants and what specific persons whose records are wanted, and not merely designate the records of a given family. United States v. Dauphin Deposit Trust Co., supra; First National Bank of Mobile v. United States, 160 F.2d 532 (5th Cir. 1947). The government will shortly have in its possession the ledger sheets and deposit slips pertaining to these accounts and from these it can specify what particular checks on what particular days are wanted.

■ The summons which is sought to be enforced is unnecessarily broad and its enforcement in toto would be unduly burdensome on the bank as heretofore set forth and would give Internal Revenue Service a license to roam at will through the bank's records. It is noted that the summons seeks to have produced all cancelled checks, withdrawals and debit memos and loan accounts including mortgage loans not only with respect to Mr. Rice but with respect to 41 other individuals and includes their joint accounts, custodial accounts and "family members". This apparently means that the government wishes to inspect the accounts of all members of the family of the named individuals. As noted above, there has been no showing as to the relationship of such family members to this investigation and it is not specified just what the government means—whether it means all relatives by blood or marriage to the third and fourth degree or merely members of an immediate family residing in the same household. In any event, there is no indication as to how the bank would know who the family members were so as to determine whose records should be produced. We will therefore refuse to enforce the summons against "family members" unless Internal Revenue Service can specify exact names of these individuals.

■ Since the ledger sheets and deposit slips have already been secured by the bank and are ready for delivery, we will enforce the summons as to these items at the present time. This will enable Internal Revenue Service to determine what specific cancelled checks they wish to examine. This will impose a considerable burden on the bank to look through the microfilms of transactions on a particular day but we do not determine this unduly burdensome. While Internal Revenue Service has offered to assist the bank, we do not believe that Internal Revenue Service is authorized to look at all the transactions of all depositors on any given day and that the bank should search out the specific cancelled checks requested by Internal Revenue Service itself. We will, therefore, grant

enforcement of the summons to produce books, records and papers with respect to Rice and any of the individuals who are firms specifically listed on page 2 of the summons including joint accounts and custodial accounts for the period January 1, 1966 through December 31, 1971, consisting of:

1. Ledgers of checking or savings accounts, together with deposit tickets.

2. Certificates of deposits for Budd L. Rice, including custodial accounts and also members of his family, limited spouse, mother, father, spouse's mother and father and children, including their spouses.

3. Cashier's or Treasurer's checks.

4. Loan accounts, including mortgage loans.

Internal Revenue Service may then specify after examination of these records which cancelled checks, withdrawals and debit memos and checks cashed by tellers they specifically wish to examine and may apply to the court for supplemental orders with respect to these items.

One other matter deserves mention. At the hearing on November 20, the court inquired as to the possible running of any statute of limitations. It later appeared to the court that a waiver of restrictions on assessment had been secured from the taxpayer as to one year but this is probably not too important since if fraud is discovered, there would be no applicable statute of limitations on assessment of deficiencies. With respect to the criminal statute of limitations, however, Agent O'Connell advised the court that criminal prosecutions arising from the 1966 return would be barred after April 15, 1973. For this reason, we have tried to expedite the determination of this case by the court as much as possible.

In view of the fact that the findings of fact and conclusions of law sufficiently appear in this opinion, this will be determined as compliance with Rule 52 (a).

An appropriate order will be entered.

### ORDER

And now, to wit, January 25, 1973, after hearing and consideration of the briefs and arguments of counsel,

It is ordered, adjudged and decreed that leave be granted to the intervenors, Budd L. Rice and Barbara L. Rice, individually and as husband and wife to intervene as parties respondent in this case.

It is further ordered that the summons served upon the respondent Northwest Pennsylvania Bank and Trust Company under date of July 17, 1973, directing the said bank to produce for examination certain books, records and papers be enforced and that the said respondent be required to produce the records documents, papers and information demanded therein as to the individuals named in the summons limited to the following:

1. Ledgers of checking or savings accounts, together with deposit tickets.

2. Certificates of deposits for Budd L. Rice, including custodial accounts and also members of his family, limited to spouse, mother, father, spouse's mother and father and children, including their spouses.

3. Cashier's or Treasurer's checks.

4. Loan accounts, including mortgage loans.

and that the same be produced for examination at Internal Revenue Service, United States Post Office Building, 270 Seneca Street, Oil City, Pennsylvania, on or before February 13, 1973, at 10:00 a. m.

It is further ordered that leave is hereby granted to the petitioners to apply to this court for further orders for production of cancelled checks, withdrawals and debit memos after completing the

examination of the papers produced initially on or before February 13, 1973.

It is further ordered that the court retain jurisdiction of this case with leave to any party to apply to the court for further orders supplementing or implementing this order.

It is further ordered that intervenor's motion for summary judgment be and the same hereby is denied.

APPENDIX I

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Mr. Budd L. Rice
R. D. 1
Seneca, Pennsylvania    16346

Dear Mr. Rice:

Investigation of your Federal income tax return for the years 1967, 1968, 1969 and 1970, and of the returns of Rice Trailer Sales, Inc., for the fiscal years ending March 31, 1967 through March 31, 1970, indicates that a substantial amount of your income for those years was not reported.  We are therefore considering recommending that criminal proceedings be instituted against you for attempted evasion of income tax and related offenses.

Before we make a final decision, you may meet with us, if you wish, for an interview concerning this matter.  You may bring counsel with you, or any other person who has knowledge of the facts in your case.  During the interview, you may present any facts or evidence you would like us to consider.

The interview will be conducted by James E. Russell, Group Supervisor, at 10:30 a. m., on Thursday, December 14, 1972, at the Internal Revenue Service offices, United States Post Office Building, 270 Seneca Street, Oil City, Pennsylvania.

Should the time and place be inconvenient, please advise this office promptly so that other arrangements can be made.  Your reply, or any questions you may have, should be addressed to the District Director, Internal Revenue Service, marked for the attention of Chief, Intelligence Division, Post Office Box 534, Pittsburgh, Pennsylvania 15230.

Sincerely yours,

(Signed) ROBERT H. CLARK
Robert H. Clark
Chief, Intelligence Division

cc: Emil W. Herman, Esquire
Rothman, Gordon, Foreman & Graudine
300 Grant Bldg., Pittsburgh, Pa.    15219

APPENDIX II

**form 2039**
**(Rev. Oct. 1969)**

## Summons

Department of Treasury
Internal Revenue Service

In the matter of the tax liability of

_____ BUDD L. RICE _____

Internal Revenue District of __Pittsburgh, Pennsylvania__

Period(s) 1966 through 1970, inclusive _____

The Commissioner of Internal Revenue

To  Northwest Pennsylvania Bank and Trust Company

At  Oil City, Pennsylvania _____

Greetings:  You are hereby summoned and required to appear before

_____ William S. O'Connell _____
an officer of the Internal Revenue Service, to give

testimony relating to the tax liability or the collection of the tax liability of the above named person for the period(s) designated and to bring with you and produce for examination the following books, records, and papers at the place and time hereinafter set forth:

The following records with respect to Budd L. Rice, and any of the below listed individuals or firms, including joint accounts, custodial accounts, family members, for the period January 1, 1966 through December 31, 1971:

1. Ledgers of checking or savings accounts, together with deposit tickets, cancelled checks, withdrawals and debit memos.

2. Certificatesof Deposits for Budd L. Rice including custodial accounts and also members of his family.

3. Cashier's or Treasurer's checks.

4. Loan accounts, including mortgage loans.

Place and time for appearance:        **(Continued)**

at  Internal Revenue Service, U. S. Post Office Bldg., 270 Seneca St., Oil City, Pa. _____

on the _____27th_____ day of _____July_____, 19 _72_ at _____10:00_____ o'clock A.M.

**Failure to comply with this summons will render you liable to proceedings in the district court of the United States or before a United States commissioner or magistrate to enforce obedience** to the requirements of this summons, and to punish default or disobedience.

Issued under authority of the Internal Revenue Code

this _____13th_____ day of _____July_____, 19 _72_

**Original**   (A) _signature_  _Special Agent_
      **Signature**   William S. O'Connell   **Title**
         412-644-5677   Pgh., Pa.   Form 2039 (Rev. 10—63)
      **EXHIBIT "A"**