**UNITED STATES of America and William J. Burgess, Revenue Agent, Internal Revenue Service**

v.

**UNION NATIONAL BANK.**

**Civ. A. No. 74–4.**

United States District Court,
W. D. Pennsylvania.

Feb. 22, 1974.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for plaintiffs.

John A. Miller, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

SNYDER, District Judge.

This case is before the Court on a Petition to Enforce an Internal Revenue Summons filed January 2, 1974 and a Motion for Leave to Intervene filed by the taxpayers.

The Summons previously served on the Union National Bank (Bank) on October 25, 1973, required it to produce certain records of Robert P. and Patricia Bengel.[1]  This proceeding is pursu-

---

1. The Summons called for the production of:
   "All records in your possession or under your control relating to the abovenamed taxpayers (individually, jointly, as nominee or trustee) or related companies for the years 1971 and 1972, including, but not limited to:
   1. Signature cards, ledger sheets, deposit slips, microfilm of deposited items, with-drawal documents and debit and credit memoranda pertaining to checking accounts, saving accounts or certificates of deposit accounts.
   2. Loan applications, financial statements, mortgages or money orders."

ant to Sections 7402(b) and 7604(a) of the Internal Revenue Service of 1954 (26 U.S.C. §§ 7402(b) and 7604(a)).[2] The Respondent Bank filed a Response alleging that the Summons was overly broad and unenforceable for that reason. On January 18, 1974, one of the taxpayers, Robert P. Bengel, named in the Summons, filed a pleading with the Court seeking a continuance of the hearing so that he could file a Petition to Intervene and a Brief in support of his Petition. The hearing was postponed and the Petitioner Bengel filed his Motion to Intervene along with a Cross-Complaint. In his Petition, Bengel alleged that the Revenue Agent was attempting to use the "Court to aid him in an investigation to determine and establish criminal fines, penalties and forfeitures in violation of the Constitution of the United States." In his Cross-Complaint the Petitioner alleges that there is a privileged contractual relationship between himself and the Bank and that the records were being sought to establish criminal liability in violation of his rights under the First, Fourth, Fifth, Sixth and Ninth Amendments to the United States Constitution.

The Petitioner sought not only the right to intervene but also the following:

1. That the Internal Revenue Service takes nothing by its pretended application for relief.

2. That Internal Revenue Service be restrained permanently from the operation, execution and enforcement of 26 U.S.Code Section 7602.

3. That the Internal Revenue Service be restrained permanently from the operation, execution and enforcement of 26 U.S.Code Section 7402(a) & (b).

4. That the Respondent Union National Bank be restrained from giving the Internal Revenue Service any information concerning Intervener's private accounts, records and other papers.

5. That the Court restrain itself permanently, and that the Court restrain and enjoin the Internal Revenue Service from the operation, execution and enforcement of 28 U.S.Code Section 2201 in its "exception with respect to Federal Taxes—" as being repugnant to the Constitution of the United States.

6. That a Three Judge Court be convened to hear and determine the above entitled action.

7. That 26 U.S.Code Section 7402 (a) and (b) and 7602 be declared unconstitutional and void.

8. That the provision "except with respect to Federal Taxes" in 28 U.S. Code 2201 be declared unconstitutional and void.

On February 1, 1974, this Court heard testimony on the Motion for Leave to Intervene filed by Mr. Bengel. At the hearing, William J. Burgess, the investigating tax officer, testified that a general audit was being conducted on the returns of Robert P. and Patricia Bengel; that the Bank records were necessary to properly investigate the tax return of the taxpayers; and that only the Intelligence Division of the Internal Revenue Service is concerned with investigating possible criminal prosecutions and that at no time has the Intelligence Division been involved in this case nor has any recommendation of any kind been made as to the possibility of any

---

2. *Section 7402(b)    To Enforce Summons,* reads:

"If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data."

*Section 7604(a)    Enforcement of Summons,* reads:

"If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data."

criminal prosecution against the Bengels.

Mr. Bengel is not an attorney but he had the help of a Jerome Daly, a lawyer disbarred in another District, who was not permitted to sit at the counsel table during the hearing. Mr. Bengel did not take the witness stand but did present two letters to the Court from the Internal Revenue Service to him purportedly in support of his allegation concerning threats by the Internal Revenue Service to prosecute him criminally.

The first was a letter under date of April 13, 1972 addressed to Mr. Robert P. Bengel from Nathaniel J. Patterson, Acting Chief, Collection and Taxpayer Service Division of the Internal Revenue Service, Pittsburgh, Pennsylvania, which stated in part as follows:

"On March 23, 1972, you submitted to the Internal Revenue Service a Form 1040 for the calendar year 1971, with 87 pages of attachments and a remittance of $162.00. The Form 1040 is not signed under penalties of perjury, and it does not report your income for 1971. The Form 1040 and attachments do not reflect the information with respect to your income and deductions which you are required by law to include thereon.

The documents submitted by you do not constitute an income tax return as required by law; and, therefore, they cannot be accepted and are being returned herewith. To comply with the law which is quoted below, you should promptly file a completed, signed Form 1040.

The legal obligation to file income tax returns is established by Sections 6011 and 6012, Title 26, United States Code, which are quoted below:
. . . . ."

The letter went on to quote in full the provisions of Sections 6011 and 6012 of Title 26 United States Code concerning the general requirement that the taxpayer's statement shall include the information required by the Form as prescribed

by the Secretary of the United States Treasury Department and the requirement that every individual having for the taxable year a gross income of $600 or more, to file a return. In addition, the letter referred to the legal obligation of signing the income tax return as required by Section 6065 of Title 26, United States Code, and further quoted Section 7203 of Title 26 which made a wilful failure to file an income tax return as required by the law and regulations a criminal offense. The letter then concluded with the following:

"We are holding your remittance of $162.00, and we will apply said amount to your tax liability when you file an income tax return for the calendar year 1971. We enclose a Form 1040 and Schedules A & B, C, D, E & R and 1971 Instructions for Form 1040 for use in preparing an income tax return for the calendar year 1971. Please advise us when you file such return in order that we may apply said amount to your liability."

The second letter was dated January 16, 1974 and was addressed to Robert P. and Patricia Bengel from C. D. Switzer, District Director of the Internal Revenue Service, the following appears:

"You submitted to the Internal Revenue Service an altered Form 1040 for the calendar year 1972. This Form 1040 is not signed under penalties of perjury, and it does not report your income for the calendar year involved. The Form 1040 does not reflect the information with respect to your income and deductions which you were required by law to include thereon. The document submitted by you does not constitute an income tax return as required by law; and, therefore, it cannot be accepted and a copy is being returned herewith. To comply with the law which is quoted below you should promptly file a completed, signed Form 1040 for the year 1972.
* * * *

The legal obligation to file income tax returns is established by Sections

6011 and 6012, Title 26, United States Code, which are quoted below:
.  .  .  ."

The letter then repeated the provisions of Sections 6011 and 6012, Sections 6065 and 7203 of Title 26, United States Code.

Mr. Bengel offered these letters under an Affidavit stating as follows:

"That attached hereto are copies of letters dated April 13, 1972 and January 16, 1974 from the District director of Internal Revenue threatening Robert P. Bengel with a Criminal Prosecution.

That this affidavit is made to show that the IRS is attempting to use this Court for the purpose of gathering evidence in a Criminal Prosecution against Robert P. Bengel."

The testimony at the hearing clearly established that the full purpose of the Summons was to investigate the tax liability of the taxpayers. An examination of the letters indicates that they were sent for the purpose of informing Mr. and Mrs. Bengel regarding the shortcomings in the returns as filed by them and the statutory penalties involved for failing to file complete tax returns as required by the Statutes and Regulations. These letters contain no threats of impending criminal action but make it perfectly clear to the taxpayer what the penalties are if the shortcomings as drawn to their attention are not corrected. Furthermore, the testimony was undisputed that no recommendation of any kind for criminal prosecution had been made up to the time of the hearing on the Petition to Enforce Internal Revenue Summons.

The first question which this Court must resolve is whether or not the taxpayer under the facts of this case has a right to intervene. We believe that he does not.

■ The Supreme Court said in Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971) that there is no absolute right to intervene. Intervention is now permissive rather than mandatory. Before the *Donaldson* case, many courts had interpreted Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964) as holding that intervention should be freely permitted as of right. Referring to the Reisman Opinion, the Supreme Court in *Donaldson, supra,* said at page 529 of 400 U.S., at page 541 of 91 S.Ct., at page 588 of 27 L.Ed.2d:

"Similarly, the Reisman language set forth in n. 10, supra, does not guarantee intervention for the taxpayer. Certainly it recites that the proposed witness 'or any interested party' may attack the summons before the hearing officer, as well as before the District Court in any ensuing enforcement proceeding, and certainly it recites that the party summoned and one 'affected by a disclosure may appear or intervene' before the court. But this language, as well as subsequent comments in Reisman, is permissive only and is not mandatory.

The language recognizes that the District Court, upon the customary showing, may allow the taxpayer to intervene. Two instances where intervention is appropriate were specified, namely, where 'the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution' or where 'it is protected by the attorney-client privilege.' Thus, the Court recognized that intervention by a taxpayer in an enforcement proceeding might well be allowed when the circumstances are proper. But the Court did not there pronounce, even when confronted with a situation concerning an attorney's work product, that the taxpayer possesses an absolute right to intervene in any internal revenue summons proceeding. The usual process of balancing opposing equities is called for.

We, thus, are not in agreement with the holdings or implications in United States v. Benford, 406 F.2d 1192, 1194 (CA7 1969); United States v. Bank of Commerce, 405 F.2d 931 (CA3 1969); and Justice v. United States,

365 F.2d 312, 314 (CA6 1966), to the effect that, under Reisman, a taxpayer may intervene as of right simply because it is his tax liability that is the subject of the summons. Instead, we agree with the opposing conclusion reached by the Fifth Circuit here, 418 F.2d [1213] at 1218, and in In re Cole, 342 F.2d 5, 7–8 (CA2), cert. denied, 381 U.S. 950 [85 S.Ct. 1803, 14 L.Ed.2d 723] (1965), and O'Donnell v. Sullivan, 364 F.2d 43, 44 (CA1), cert. denied, 385 U.S. 969 [87 S.Ct. 501, 17 L.Ed.2d 433] (1966)."

■ *Donaldson* is clear to the effect that the records of the bank are not the taxpayer's; nor does he have a proprietary interest of any kind in them. The Court stated that (at page 522, at page 538 of 91 S.Ct., at page 585 of 27 L.Ed. 2d):

"We emphasize initially, as did Judge Tuttle in his opinion for the Court of Appeals, 418 F.2d at 1214, that what is sought here by the Internal Revenue Service from Mercurio and from Acme is the production of Acme's records and not the records of the *taxpayer*. Further, as Judge Tuttle also emphasized, this is not a case where a summons has been issued to the taxpayer himself seeking access to his books and information from his mouth. Neither is it a case where the summons is directed at the taxpayer's records in the hands of his attorney or his accountant, with the attendant questions of privilege, or even in the hands of anyone with whom the taxpayer has a confidential relationship of any kind. Each of the summonses here, we repeat, was directed to a third person with respect to whom no established legal privilege, such as that of attorney and client, exists, and had to do with records in which the taxpayer has no proprietary interest of any kind, which are owned by the third person, which are in his hands, and which relate to the third person's business transactions with the taxpayer."

■ At the hearing on the Petition for Leave to Intervene this Court was concerned with whether or not when the summons was issued the Internal Revenue Service was presently investigating Robert P. or Patricia Bengel for the purpose of criminal prosecution and if any recommendation had been made with respect to any possible criminal charges. Mr. William J. Burgess unequivocally stated that there was nothing of this nature pending at the time of the issuance of the summons or now. Taking the testimony at the hearing as a whole, this Court feels that the test set forward in *Donaldson* has been complied with and that (1) the summons was not issued to obtain material sought in a criminal prosecution, and (2) the material sought is not protected by any privilege that the taxpayer may raise.

■ As to the Constitutional objections raised by the Intervener, all of them have been considered by the Supreme Court. In Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L. Ed.2d 548 (1973), the Supreme Court said that "it is now undisputed that a special agent is authorized, pursuant to 26 U.S.C. § 7602 to issue an Internal Revenue summons in aid of a tax investigation with civil and possible criminal consequences." In Reisman v. Caplin, *supra*, the Court reviewed the structure that Congress provided for the issuance and enforcement of an internal revenue summons. Ten months after *Reisman* the Court decided United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964) in which it was primarily concerned with the standards the Internal Revenue Service must meet in order to obtain judicial enforcement of its orders. The Court held that the statutes required only that the investigation be conducted pursuant to a legitimate purpose, that the inquiry be relevant to that purpose, that the information sought is not already within the possession of the Internal Revenue Service, and finally, that the administrative steps required by the Code have been followed.

As to the requirements set down by the *Powell* decision, at the hearing on February 1, 1974, this Court was carefull to ascertain whether any or all of the information requested in the summons to the Union National Bank was in the possession of the Internal Revenue Service before the issuance of the summons. Both the Government and the Internal Revenue Agent assured the Court that they did not have any such information before the summons was issued, and that the only way a proper evaluation of the taxpayer's liability for the years in question could be determined would be to examine the records sought to be produced by the summons. This Court is satisfied that this was a valid representation.

An additional Constitutional infirmity of the Statutes alleged by the Intervener was that neither the Internal Revenue Service nor the taxpayer's bank were required to give notice of the service of the summons to the taxpayer. This question does trouble the Court, but is completely moot in the present case because the Respondent Bank did, in fact, notify the taxpayer of the issuance of the summons and a full hearing was afforded to the taxpayer on his right to intervene.

Since Petitioner's Constitutional arguments have been found to be without any legal merit, his requests to declare 28 U.S.C. § 2201 and 26 U.S.C. § 7402(a) and (b), and § 7602, unconstitutional, to restrain the execution of 26 U.S.C. § 7402(a) and (b), 26 U.S.C. § 7602, and 28 U.S.C. § 2201, and to convene a Three Judge Court must also be denied.

Finally, in support of the position adopted by this Court in denying the taxpayer's right to intervene in the present case, this Court has carefully analyzed the recent case of United States v. Northwest Pennsylvania Bank & Tr. Co., 355 F.Supp. 607 (W.D.Pa. 1973), a case decided by Judge William Knox of this Court, and we find that the facts are sufficiently different to permit differing results. In the *Northwest*

*Bank & Trust* case the Court had before it a letter from the Chief of Intelligence Division, Internal Revenue Service, indicating to the taxpayer that the Service was considering recommending institution of criminal proceedings. Judge Knox, in a very scholarly opinion, said with respect to the impact of the letter, at page 613:

"Considering this case in light of Reisman, Donaldson and Couch, we have concluded that while there has been as yet no formal recommendation of prosecution, nevertheless the investigation is sufficiently far along that it appears that under these circumstances in the light of what was said in Donaldson and Couch, we should allow the taxpayer to intervene and be heard."

Conversely, in our situation, even though letters have been sent to the taxpayer from the District Director of the Internal Revenue Service, there was never any statement to the effect that: "We are therefore considering recommending that criminal proceedings be instituted against you for attempted evasion of income tax and related offenses." This did occur in the *Northwest Bank* case. Here the Petitioner initially failed in his responsibility by not completing his tax return as required by 26 U.S.C. §§ 6011, 6012, and 6065. Certainly, the Internal Revenue Service had an obligation to call this to the taxpayer's attention and seek to have him correct the shortcomings before any remedial action of either a civil or criminal nature would take place. This is what has occurred and, therefore, the facts of the present case before this Court are sufficiently distinguishable from the *Northwest Pennsylvania Bank and Trust Company* case.

Finally, there remains to be considered the Answer of the Union National Bank to the Petition for the Enforcement of Internal Revenue Summons which alleges that the Summons served upon it in connection with the investigation of the tax liabilities of Robert P. and Patricia Bengel is overly broad and

is unenforceable for that reason. With this we do not agree and we believe the Internal Revenue Service is entitled to certain records, documents, etc., of the Bank's records relating to Robert P. and Patricia Bengel as will more fully be set forth in the following Order of this Court.