**Antone R. COOK, Plaintiff,**

v.

**UNITED STATES of America et al., Defendants.**

**Civ. No. LV 74–140.**

United States District Court, D. Nevada.

Dec. 27, 1974.

## ORDER

ROGER D. FOLEY, Chief Judge.

### FACTS

On September 25, 1974, Plaintiff Cook filed a Petition and Complaint against the above named defendants. By earlier order of this Court, the action was dismissed as to the Government defendants. Therefore, the only remaining defendants are First National Bank of Nevada and Deseret Federal Credit Union.

Plaintiff alleges that on September 5, 1974, an Internal Revenue Service Summons was issued upon the bank and credit union, seeking information, copies of accounts, records and checks for the purpose of establishing criminal liability against him. He also alleges that Special Agent Smith has obtained, or is seeking to obtain, this information by extortion and threats of criminal prosecution under the Bank Secrecy Act of 1970 and 26 U.S.C. § 7210. Cook claims that these checks, accounts and records, and the information relating thereto, are his personal papers and effects within the scope of the Fourth Amendment to the Constitution of the United States. Plaintiff therefore alleges that he is entitled to an injunction prohibiting the bank and credit union from giving any information about his personal accounts to IRS agents.

Plaintiff alleges that this Court has jurisdiction as this is a case and controversy arising in law and equity under the Constitution and laws of the United States and more particularly Articles III, IV, V, and VI, the First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Thirteenth Amendments, and Title 26 of the United States Code. In addition, he alleges that this Court has jurisdiction under 42 U.S.C. §§ 1983, 1985 and 1986, stating that the purpose of this action is to protect his civil rights.

Plaintiff sought a temporary restraining order, which was denied by this Court on October 4, 1974. On that same date, this Court ordered all defendants to appear and show cause on November 14, 1974, why a preliminary injunction should not issue.

Defendant First National Bank filed its answer to Cook's Complaint and Petition on October 16, 1974, stating as an affirmative defense that Cook failed to state a claim upon which relief can be granted. Defendant Deseret Federal Credit Union failed to answer, and has otherwise failed to appear in this action.

The Government defendants filed a motion to dismiss them from this action, and the hearing on this motion was also set for November 14, 1974. This motion was subsequently granted.

At the November 14th hearing, Deseret Federal Credit Union was not present or represented by counsel. First National Bank was represented by counsel, stating only that it would comply with any order of this Court. Following completion of oral argument, the matter stood submitted.

### DISCUSSION

At the hearing, this Court expressed its concern as to whether it had jurisdiction to grant the relief requested and whether plaintiff had standing to raise the instant objections. Cook's counsel directed his argument to plaintiff's Fourth and Fifth Amendment claims, and did not assert that the Court has jurisdiction under Title 42. However, since the stated purpose of this suit is to protect Cook's civil rights, his allegation that this Court has jurisdiction under 42 U.S.C. §§ 1983, 1985 and 1986 will first be considered.

It is first noted that plaintiff alleges that these sections of Title 42 confer jurisdiction upon this Court. But the provisions of Title 42 only confer remedies

for the enforcement of rights arising under the Constitution or federal law. Here they merely afford a remedy in cases to which jurisdiction is granted by 28 U.S.C. § 1343. Hagans v. Lavine, 415 U.S. 528, 534–536, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); Howard v. State Department of Hwys. of Colorado, 478 F.2d 581, 585 (10th Cir. 1973); Quarles v. State of Texas, 312 F.Supp. 835, 837 (S.D.Tex.1970). However, plaintiff's allegation of jurisdiction under 42 U.S.C. §§ 1983, 1985 and 1986 may be construed as asserting jurisdiction under 28 U.S.C. § 1343, and will be so construed. Quarles v. State of Texas, *supra*, 312 F. Supp. at 837.

There can be no doubt that "state action" is required for there to be a claim under § 1983. Adams v. Southern California First National Bank, 492 F.2d 324 (9th Cir. 1973); Hall v. Garson, 430 F.2d 430, 439 (5th Cir. 1970). Here there is no allegation made, nor can there be, that "state action" is present. Therefore, Cook has not presented a claim under § 1983. Likewise, to state a cause of action under § 1985, it is necessary that there be an allegation that there was a conspiracy to deny plaintiff a constitutional right, privilege or immunity, Jones v. Bombeck, 375 F.2d 737, 738 (3rd Cir. 1967), and no claim for relief under § 1986 will lie unless a valid claim has first been established under § 1985. Johnston v. National Broadcasting Company, Inc., 356 F.Supp. 904, 909 (E.D.N.Y.1973). Here Cook has failed to allege that there was a conspiracy to deprive him of any right, privilege or immunity, thus he has failed to state a cause of action under either § 1985 or § 1986. It is therefore concluded that Cook has failed to state a cause of action under Title 42, and this Court has no jurisdiction under 28 U.S.C. § 1343.

■ However, there is also Cook's sweeping allegation that this is a case arising under the Constitution and laws of the United States. This could be construed as alleging jurisdiction under 28 U.S.C. § 1340, which provides that "district courts shall have original jurisdic-tion of any civil action arising under any Act of Congress providing for internal revenue . . . ." In Kirschen-baum v. Beerman, 376 F.Supp. 398 (W. D.Pa.1974), plaintiffs filed a complaint seeking to quash, by means of injunction, several IRS summonses served upon their banks. On the jurisdictional issue, the court held:

This Court has jurisdiction under 28 U.S.C. § 1340 since the suit involves a substantial controversy as to the construction and effect of 26 U.S. C. § 7602. DeMasters v. Arend, 313 F.2d 79 (9th Cir. 1963). The Court is satisfied that this suit is not "an action for the purpose of restraining the assessment or collection of any tax", precluded by 26 U.S.C. § 7421(a). 376 F.Supp. at 399.

Cook alleges that this is not an action to bar the lawful collection or assessment of taxes, and the Court is satisfied that it has jurisdiction to hear the matter under § 1340.

■ But this does not resolve the standing issue, for as Judge Teitelbaum held in *Kirschenbaum*:

However, it is also readily apparent that none of the plaintiffs have standing to maintain this action, since they are not named as parties to the summonses. (citation omitted) This case is governed by the decision of the Supreme Court in Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), in which a similar injunction request by a taxpayer was held to have been properly dismissed for lack of standing. *Reisman* held that the only proper method for a taxpayer to challenge a Section 7602 summons would be to intervene in the action brought by the government to enforce the summons. Therefore, plaintiffs' injunction request must be dismissed. 376 F.Supp. at 399.

When the Court raised this standing issue at the hearing, Cook's counsel relied on Kelley v. United States, 503 F.2d 93 (9th Cir. 1974), and Fitzmartin v. Bingler, 244 F.Supp. 541 (W.D.Pa.1965).

In *Kelley*, the taxpayer sought to enjoin the enforcement of an IRS summons issued pursuant to Section 7602. The summons commanded Kelley's bank to produce all records pertaining to her. She sought an order restraining the bank from granting the IRS access to the records and restraining the IRS from enforcing the summons. The district court dismissed her complaint for lack of jurisdiction and failure to state a claim. Citing Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), the Ninth Circuit held:

> Injunction by a taxpayer will not lie against the Internal Revenue Service or its officers in a situation such as this. A remedy at law exists through intervention of the taxpayer in judicial proceedings brought by the Commissioner in enforcement of his summons. 503 F.2d at 93.

It was on the basis of this holding that this Court earlier dismissed the action as to the Government defendants.

However, the court in *Kelley* was faced with the problem that the taxpayer's bank had indicated willingness to comply with the summons, thus obviating the necessity for enforcement proceedings. With reference to this problem, the Ninth Circuit quoted, 503 F.2d at 94, the following from *Reisman*:

> Nor would there be a difference should the witness indicate * * * that he would voluntarily turn the papers over to the Commissioner. If this be true, either the taxpayer or any affected party might restrain compliance, as the Commissioner suggests, until compliance is ordered by a court of competent jurisdiction. This relief was not sought here. Had it been, the Commissioner would have had to proceed for compliance, in which event the petitioners or the Bromleys might have intervened and asserted their claims. 375 U.S. at 449–450, [84 S.Ct. 508, at 514, 11 L. Ed.2d 459].

The *Kelley* court then examined Fitzmartin v. Bingler, *supra*, which followed the suggestion set forth in *Reisman*. In *Fitzmartin*, the IRS issued a summons to the taxpayers' bank. The bank notified taxpayers that it would comply unless restrained. Taxpayers filed an action to enjoin the Commissioner, the IRS Agent and the bank from complying with the subpoena, and a temporary restraining order was issued at taxpayers' request, without notice or hearing staying the defendants from further action under the subpoena. The Commissioner appeared and requested the dismissal of the complaint and the vacating of the restraining order in accordance with *Reisman*. The *Fitzmartin* court, in examining the language in *Reisman*, stated:

> We read in the words "the taxpayer or any affected party might restrain compliance" as permitting the type of proceeding as brought here. However, we have doubts as to the propriety of making the District Director of the Internal Revenue Service and the Internal Revenue Agent parties to the action. 244 F.Supp. at 542.

Since the government had indicated that it was prepared to proceed under § 7604(a) or § 7402(b) to compel production, the *Fitzmartin* court dismissed the complaint as to the District Director and the IRS Agent and vacated the restraining order as to them. But the restraining order as to the banks was to remain in effect until disposition of the proceedings to compel production. 244 F. Supp. at 542. Nowhere in its opinion does the *Fitzmartin* court address the standing issue.

Following its discussion of *Fitzmartin,* the *Kelley* court stated:

> In the case before us questions are presented as to the standing of appellant to protest production under Couch v. United States, 409 U.S. 322, 93 S. Ct. 611, 34 L.Ed.2d 548 (1973), and Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). Inclusion of canceled checks of the taxpayer among the documents sought would seem to give standing,

at least as to such checks. However, all these issues can be resolved at hearings in due course on application by appellant for intervention in enforcement proceedings.

Accordingly we find no error in denial by the district court of an injunction against the Internal Revenue Service or its officers. However, *an opportunity should be afforded appellant to seek an order restraining the bank from compliance with the summons until such constitutional claims as she has standing to assert have had judicial consideration.*

The order dismissing the action is vacated and the matter remanded for further proceedings. 503 F.2d at 94. (emphasis added)

Thus the Ninth Circuit was concerned with the standing issue. It is important to note that the court did not state that she had standing to get the restraining order, rather it stated that she should have an opportunity to seek such an order until such constitutional claims as she had standing to assert had judicial consideration. It was this precise issue that this Court raised at the hearing. On this point, Cook's counsel did not come forward with specifics, rather he relied upon the general holdings in *Fitzmartin* and *Kelley* to support his claim of standing. This Court will now consider the general principles relating to standing in this area.

In Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), an IRS agent, acting under § 7602, issued summonses to the taxpayer's former employer and its accountant seeking production of certain of the employer's records having to do with the taxpayer. Shortly prior to the issuance of these summonses, the district court, upon petitions filed by the taxpayer, issued temporary restraining orders restraining compliance with any summonses "until such time as an order of a court of competent jurisdiction has been issued requiring such compliance." 400 U.S. at 520, 91 S.Ct. at 537. The government then filed petitions to compel production pursuant to § 7604(a) and § 7402(b), and the taxpayer attempted to intervene. The district court denied the motions to intervene, and ordered production of the records requested. In affirming this decision, the Supreme Court first stressed that the IRS was seeking production of the former employer's records and not the records of the taxpayer. 400 U.S. at 522–523, 91 S.Ct. 534, 27 L.Ed.2d 580. It then examined the nature of the taxpayer's interest in these records, and held:

> We therefore hold that the taxpayer's interest is not enough and is not of sufficient magnitude for us to conclude that he is to be allowed to intervene. Were we to hold otherwise, as he would have us do, we would unwarrantedly cast doubt upon and stultify the Service's every investigatory move. 400 U.S. at 531, 91 S.Ct. at 542.

The *Donaldson* court was faced with one additional problem as the taxpayer, relying on dictum from *Reisman*, urged that the summons cannot be utilized in aid of an investigation that has the potentiality of resulting in a recommendation that a criminal prosecution be instituted against the taxpayer. Cook has made a similar allegation in his complaint. On this point, the Supreme Court held:

> Congress clearly has authorized the use of the summons in investigating what may prove to be criminal conduct. The regulations are positive. * * * The underlying statutes are just as authoritative. * * * There is no statutory suggestion for any meaningful line of distinction, for civil as compared with criminal purposes, at the point of a special agent's appearance. * * * To draw a line where a special agent appears would require the Service, in a situation of suspected but undetermined fraud, to forgo (sic) either the use of the summons or the potentiality of an ultimate recommendation for prosecution. We refuse to draw that line and thus to stultify enforcement of federal law. * * *

We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution. 400 U.S. at 535–536, 91 S.Ct. at 544.

This point was reaffirmed in Couch v. United States, 409 U.S. 322, 326, 93 S. Ct. 611, 614, 34 L.Ed.2d 548 (1973), when the Court held:

It is now undisputed that a special agent is authorized, pursuant to 26 USC § 7602, to issue an Internal Revenue summons in aid of a tax investigation with civil and possible criminal consequences.

The issue in *Couch* was whether a taxpayer may invoke his Fifth Amendment privilege against compulsory self-incrimination to prevent the production of his business and tax records in the possession of his accountant. The Court held that he may not. 409 U.S. at 336, 93 S.Ct. 611, 34 L.Ed.2d 548.

These same issues were again discussed in California Bankers Assn. v. Shultz, 416 U.S. 21, 94 S.Ct. 1494, 39 L. Ed.2d 812 (1974). The case involved an attack by several banking groups on the Bank Secrecy Act of 1970, and included a discussion of a depositor's interest in his bank's records of his accounts, 416 U.S. at 51–53, 94 S.Ct. at 1512:

The bank plaintiffs also contend that the recordkeeping requirements imposed by the Secretary pursuant to the Act undercut a depositor's right to effectively challenge a third-party summons issued by the Internal Revenue Service. See Reisman v. Caplin, 375 U.S. 440, [84 S.Ct. 508, 11 L.Ed.2d 459] (1964); Donaldson v. United States, 400 U.S. 517, [91 S.Ct. 534, 27 L.Ed.2d 580] (1970); Couch v. United States, 409 U.S. 322, [93 S.Ct. 611, 34 L.Ed.2d 548] (1973). Whatever wrong such a result might work on a depositor, it works no injury to his bank. * * * Claims of depositors against the compulsion by lawful process of bank records involving the depositors' own transactions must wait until such process issues.

Certain of the plaintiffs below, * * * and various individual plaintiff depositors, argue that if "the dominant purpose of [the Bank Secrecy] Act is the creation, preservation, and collection of evidence of crime . . . [i]t is against the standards applicable to the criminal law, then, that its constitutionality must be measured." They contend that the recordkeeping requirements violate the provisions of the Fourth, Fifth, and First Amendments to the Constitution. At this point, we deal only with such constitutional challenges as they relate to the recordkeeping provisions of Title I of the Act.

We see nothing in the Act which violates the Fourth Amendment rights of any of these plaintiffs. Neither the provisions of Title I nor the implementing regulations require that any information contained in the records be disclosed to the Government; both the legislative history and the regulations make specific reference to the fact that access to the records is to be controlled by existing legal process.

Plaintiffs urge that when the bank makes and keeps records under the compulsion of the Secretary's regulations it acts as an agent of the Government, and thereby engages in a "seizure" of the records of its customers. But all of the records which the Secretary requires to be kept pertain to transactions to which the bank itself was a party. See United States v. Biswell, 406 U.S. 311, 316 [92 S.Ct. 1593, 32 L.Ed.2d 87] (1972). The fact that a large number of banks voluntarily kept records of this sort before they were required to do so by regulation is an indication that the records were thought useful to the bank in the conduct of its own business, as well as in reflecting transactions of its customers. We decided long ago that an Internal Revenue summons directed to a third-party bank was not a violation of the Fourth Amendment rights of either

the bank or the person under investigation by the taxing authorities. See First National Bank v. United States, 267 U.S. 576 [45 S.Ct. 231, 69 L.Ed. 796] (1925), aff'g 295 F. 142 (SD Ala.1924); Donaldson v. United States, supra, 400 U.S. 517, 522, [91 S.Ct. 534, 538, 27 L.Ed.2d 580.] (1971) "[I]t is difficult to see how the summoning of a third party, and the records of a third party, can violate the rights of the taxpayer, even if a criminal prosecution is contemplated or in progress." [400 U.S.] at 537 [,91 S.Ct. at 545] (Douglas, J., concurring).

In addition, the Court held that the depositors' Fifth Amendment claims were without merit. 416 U.S. at 55, 94 S.Ct. 1494, 39 L.Ed.2d 812.

A reading of these Supreme Court cases confirms that the depositor-taxpayer does not have a protectable interest in his bank records, and that his Fourth and Fifth Amendment rights are not violated by the fact that these records are maintained and produced at the request of the IRS. And this is true despite the fact that a criminal prosecution is contemplated or in progress. This analysis appears consistent with rulings in both the Ninth Circuit and the other circuits. As stated in Stark v. Connally, 347 F.Supp. 1242, 1248 (N.D. Cal.1972), modified, California Bankers Assn. v. Shultz, supra, 416 U.S. at 77–78, 94 S.Ct. 1494:

> At the outset we must note the holdings in this and other circuits that communications between banks and their customers are not privileged communications in the technical sense of that term; that bank customers have no rights in bank records; that such records may be subpoenaed from the bank, even over the objection of the depositor, notwithstanding the fact that the records concern the customer's account; that *customers have no standing to object to subpoenas requiring their bank to produce records of the customer's accounts and that the production by the bank of its records under subpoena is not, as to the customer, either a Fourth Amendment illegal search and seizure nor a Fifth Amendment self-incrimination.* Harris v. United States, 413 F.2d 316 (9th Cir. 1969). See also, Galbraith v. United States, 387 F.2d 617 (10th Cir. 1968); Application of Cole, 342 F.2d 5 (2d Cir. 1965); De Masters v. Arend, 313 F.2d 79, 85 (9th Cir. 1963). (emphasis added).

On the surface, it appears that there is a conflict between these holdings and the language set forth in *Reisman*, and it is understandable that Cook feels that *Reisman* gives him the right to bring an action such as this. As noted in United States v. Union National Bank, 371 F. Supp. 763, 767–768 (W.D.Pa.1974), before *Donaldson*, many courts had interpreted *Reisman* as holding that intervention should be freely permitted as of right simply because it is the taxpayer's tax liability that is the subject of the summons. The court there did not agree with this rationale, and held:

> *Donaldson* is clear to the effect that the records of the bank are not the taxpayer's; nor does he have a proprietary interest of any kind in them. 371 F.Supp. at 768.

And, as stated in Perkal v. Rayunec, 237 F.Supp. 102, 104 (N.D.Ill.1964):

> It would therefore appear that the case law clearly states that a taxpayer is without standing to defeat compliance with a Section 7602(2) summons directed to a third party asking for production of that party's own records.

Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964) on which the taxpayer relies, does not support his position. Although the Court stated there by way of dicta that parties affected by a disclosure may appear and assert their claims, there is no reference made to the situation at bar in which the taxpayer seeks to quash a summons directed to

an *independent* bank for production of its *own* records. (emphasis in original).

Finally, in discussing *Reisman*, the Ninth Circuit has held:

> It is clear that summonses to examine taxpayer's records, obtained pursuant to 26 U.S.C. § 7602, may be used even where their purpose is allegedly to uncover crime, when no criminal case is actually pending against the taxpayer. * * * Moreover, appellants have no standing to prevent the acquisition of information from independent third party witnesses by enjoining the use of Sec. 7602, regardless of any right appellants might have to suppress the use of such evidence against them in a future criminal proceeding. Howfield, Inc. v. United States, 409 F.2d 694, 697 (9th Cir. 1969).

*Reisman* indicates that an "affected party might restrain compliance . . . until compliance is ordered by a court of competent jurisdiction." The case law makes it clear that for one to be an "affected party" entitled to this relief, he must have standing to protest production of the requested records. It is also clear that one does not have standing to object when the summons is directed to a third party for production of its own records. Here Cook is seeking to enjoin production, pursuant to a Section 7602 summons, of records belonging to the bank and credit union. He simply has no standing to seek this relief.

This Court is not unmindful of the reservations expressed by Judge Teitelbaum in Kirschenbaum v. Beerman, *supra*, and it can understand the frustration of a taxpayer in a situation such as this. However, to follow the lead of cases such as Fitzmartin v. Bingler would be an exercise in futility. If this Court were to grant the injunctive relief sought by Cook, the government would then simply seek enforcement of its summonses under the provisions of Sections 7604(a) and 7402(b). Cook would then have to attempt to intervene in those proceedings. In order to be successful, he would have to establish that he has standing to prevent production of records belonging to the bank and credit union. The law is clear that he would have no such standing. Thus, to grant the relief sought would frustrate both judicial economy and the taxpayer's own interests, for it would only lead to further costly and time consuming litigation in which the taxpayer has no chance of success. This Court can only conclude that the relief sought should be denied.

CONCLUSION

In accordance with Kelley v. United States, *supra*, this Court has considered the constitutional claims asserted by Cook and has determined that he does not have standing to maintain this action seeking to enjoin production of records belonging to the First National Bank of Nevada and Deseret Federal Credit Union. It is therefore ordered that the request for a preliminary injunction is denied, and the case is dismissed.